QUICK *v.* DETROIT & MACKINAC RAILWAY CO.

1. CONSTITUTIONAL LAW — MASTER AND SERVANT — FELLOW-SERVANTS — STATUTES — RAILROADS.

Act No. 104, Pub. Acts 1909, changing .the rules affecting fellow-servants, assumed risks and contributory negligence as to common carrier railroad companies, is constitutional; and it is as much within the power of the legislature to alter the common-law rules concerning the risks the servant assumes and his contributory negligence as to abolish the fellow-servant rule.[1]

2. MASTER AND SERVANT — ASSUMED RISKS — FELLOW-SERVANTS.

It was the apparent intention of the legislature, in declaring the fellow-servant rule abrogated in actions against railroads, to modify the doctrine of assumed risk by eliminating the risk of negligence of fellow-servants, and also the risk of injury arising from violation of any

[1] The authorities on the validity of a statute abrogating fellow-servant rule are collated in a note in 12 L. R. A. (N. S.) 1040.

statutory duty and from defective cars, appliances, machinery, roadbed, etc.; it is not in harmony with the first section or with the purpose of the statute to hold that the injured servant assumes the risk of the negligence of a co-employee.

Error to Iosco; Connine, J. Submitted June 20, 1911. (Docket No. 44.) Decided May 29, 1913.

Case by Rudolph J. G. Quick against the Detroit & Mackinac Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Henry, Henry & Henry (James McNamara* and *Humphrey & Grant,* of counsel), for appellant.

*De Vere Hall,* for appellee.

McALVAY, J. Plaintiff, an employee of defendant, brought suit for damages against it for personal injuries sustained by him during such employment. The accident by which he was injured occurred September 7, 1909. On this date the defendant company was engaged with a construction train, consisting of an engine and some flat cars, in picking up steel rails alongside of the track, which had been taken up and replaced by heavier rails. This was a construction crew, divided into two sections of 14 men each, and was working on each side of the track. The rails were 30 feet in length and lay parallel with the track. They were loaded on the flat cars while the train moved slowly forward; the crew on each side being divided into 7 men at each end of the rail, who picked it up and, at a signal from the foreman in charge, who stood on the car, raised and put it on the car. On each side of these flat cars, about 8 feet from the ends, were 2 short stakes, about 10 inches above the car, set into pockets. In loading it was necessary for the men to raise the rail high enough to go over these stakes.

While at this work a rail, at one end of which plaintiff and others were at work, was raised high enough to go over the stakes, but the other end, not being lifted or thrown high enough, struck the stake and fell back and threw the end which was already on the car back to the ground. In falling this rail struck the plaintiff upon his leg and broke it. Plaintiff was an experienced workman, having been in the employ of the defendant company several times before this last time, and defendant contended that he was guilty of contributory negligence and had assumed the risk of his fellow-servants. The negligence charged in his declaration and relied upon by plaintiff was the negligence of fellow-servants. Plaintiff relies upon Act No. 104 of the Public Acts of 1909 to entitle him to recover. The result of the trial was a verdict and judgment of $866.80 in favor of plaintiff. Defendant upon a writ of error has brought the case to this court for review.

At the time this case was reargued and finally submitted, this court had under consideration several cases involving the same questions. In the case of *Sonsmith* v. *Railroad Co.*, 173 Mich. 57 (138 N. W. 347), decided November 8, 1912, the constitutionality of said act was passed upon and sustained, and its provisions were construed. Mr. Justice OSTRANDER, in the opinion handed down in that case, has cited and digested authorities, including the cases passed upon by the Supreme Court of the United States, where the Federal statute (from which this legislation had its source) has been before that court for construction. There is therefore no necessity to consider at length the questions determined in that case. Suffice it to say that all of them which are involved in the instant case were decided against the contention of appellant.

Appellant in the instant case contends: (1) That the act in question is unconstitutional; (2) that plaintiff was guilty of contributory negligence; (3) that he assumed all the ordinary and obvious risks of his

employment, which included the negligence of his fellow-servants.

The first and second of these contentions are determined by the decision of this court in *Sonsmith* v. *Railroad Co., supra.*

There remains to be considered the contention that plaintiff assumed the risk of this injury, the negligence upon which he relies charged in the declaration being the negligence of the engineer in running the train too fast, and the negligence of his fellow-servants in not properly lifting and loading the rail. It is urged in the instant case that the duties violated, upon which negligence is predicated, were common-law duties, the risk of the violation of which plaintiff assumed when he entered the employment. It is urged that Act No. 104, upon the question of assumed risk, is simply declaratory of the common law as it has always existed in this State, and that the statute, if held to be constitutional, simply modifies the doctrine of assumed risk in case of the violation of a statutory duty on the part of the common carrier railroad company.

The material portions of the act necessary to be considered, read as follows:

"*The people of the State of Michigan enact:*

"SECTION 1. Every common carrier railroad company in this State shall be liable to any of its employees, * * * for all damages which may result from the negligence of any such railroad company or from the negligence of any of its officers, agents or employees. * * *

"SEC. 2. In all actions hereafter brought against any such common carrier railroad company under or by virtue of any of the provisions of this act to recover damages for personal injury to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery: *Provided,* that the negligence of such employee was of a lesser degree than the negligence of such company, its officers, agents or employees: *Pro-*

*vided further,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier railroad company of any statute enacted for the safety of employees contributed to the injury of such employee, and such employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

It is contended that, unless taken away by this statute, the assumption of risk by plaintiff of the negligence of his fellow-servants constitutes a complete defense to this action, and, further, that this act was not passed as an act to provide for the safety of the employees of common carrier railroad companies, but, as its title indicates, it prescribes the liability of such companies to their employees, and that under this title no such provision could be included.

Before entering upon a discussion of these propositions, we desire to call attention to the opinion in *Sonsmith* v. *Railroad Co., supra,* which requires a careful and critical examination in order to understand the grounds upon which the court declared it constitutional and its application to the doctrine of contributory negligence. By reason of its bearing upon the construction of the statute relative to the question here involved, we quote briefly from that opinion, as follows:

"The act must be construed, if it is possible to do so, so as to give effect to the legislative intention. And this intention must be found in the act itself and in the conditions which it is assumed the legislature sought to remedy. Nothing in the act indicates a purpose to interfere with the exercise of the judicial power, as it existed when the Constitution was adopted, a purpose wholly beyond the legislative power. But the intention to modify—alter—certain

rules of the common law, uniformly applied and enforced by the courts, is evident, and this the legislature undoubtedly may do."

Earlier in the opinion, where the court referred to these rules of the common law, adopted under our Constitution, which this statute undertakes to modify, the court said:

"Two doctrines of the common law, adopted in this State, particularly applied in actions for personal injuries, are, *First,* that no recovery can be had for the results of another's negligent conduct if the person injured, by his own negligence, contributed to his own injury; and, *second,* that one entering into an employment assumes the obvious and usual risks of the employment, among which is the risk that an injury may be received on account of the negligence of other employees engaged in the same general employment."

It cannot be contended, under the provisions of our Constitution, that these rules of the common law may not be modified by the legislature. The enactment of this statute is an illustration of the exercise of such legislative power. It follows that if one of these common-law doctrines may be modified, as we have held in the *Sonsmith Case,* the legislature may exercise the same power over the other. This proposition must be accepted in construing this statute in the instant case upon the question of assumption of risk, and in giving its construction the court must follow the rule as laid down and quoted in the *Sonsmith Case.*

It is clear to us that the construction given by the court to section 1, which places liability upon a common carrier railroad company for injury to any of its employees for all damages which may result from the negligence of such company, its officers, agents, or *employees,* includes the negligence of all *fellow-servants.* To accept defendant's construction of the statute upon the question of the risk assumed by plaintiff of the negligence of a fellow-servant would be entirely out of harmony with the construction of section

1 of the act already given.  To hold the company liable for the negligence of its employees (fellow-servants of plaintiff), and allow at the same time the defense of assumed risk to be interposed to defeat such liability, would defeat the very object of the statute in attempting to adopt the rule of comparative negligence in this State.  This statute must be construed, if possible, as a whole, and harmoniously.  The conclusion is unavoidable that section 1, by its express terms, eliminates the doctrine of the assumption of the risk of the negligence of fellow-servants in these cases.  Such construction does not create a provision looking toward the safety of employees, but one determining the liability of common carrier railroad companies to their employees.  Nor in our opinion is such construction discredited by the provision of section 2 that:

"Such employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

This provision was simply declaratory of the law as already determined by this court in *Sipes* v. *Starch Co.,* 137 Mich. 258 (100 N. W. 447), wherein it recognized the rule that parties may not contract to disregard a statutory duty.  It is clear that the intention of the legislature was to modify the doctrine of the assumption of risk by eliminating the risk of the negligence of a fellow-servant, and also the risk of injury arising from a violation of a statutory duty, and also the risk arising—

"By reason of any defect or insufficiency due to the negligence of any such common carrier railroad company in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, coal docks or other equipment."

Such modification is in harmony with the modifica-

tion of the doctrine of contributory negligence already construed by this court, and in respect to the risk of injury from the negligence of a fellow-servant, absolutely essential to sustain such construction.

It is also contended that the charge of the court upon the question of assumed risk was misleading and confusing to the jury, and that under the charge the court should have submitted two special questions bearing upon the risk assumed by plaintiff. It is a fact, as claimed, that the court did in terms charge at length upon the question of assumed risk as would be proper before the enactment of this statute, but later the court charged:

"In speaking of the risks which the plaintiff assumed, I do not want to be understood by you as saying or charging that the plaintiff would assume any risk that was due to the negligence of his fellow-servants. That would be a risk that he would not assume."

This undoubtedly was by inadvertence omitted when charging earlier upon this question, and taken together this charge was a proper and correct one. The court was not in error, either in its charge upon the question of assumed risk or in refusing to give the questions proposed. The learned trial judge correctly construed this statute, and the case was properly submitted to the jury.

The judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, BROOKE, STONE, OS-TRANDER, and BIRD, JJ., concurred.