CHAPMAN *v.* UNITED STATES EXPRESS CO.

1. MASTER AND SERVANT—FEDERAL CARRIERS LIABILTY ACT—NEGLIGENCE—INTERSTATE COMMERCE.

Where defendant express company was doing an interstate commerce business in which its express messenger was engaged at the time of his injury that occurred by his falling from a baggage car because his co-laborer had removed the truck they had been using, as plaintiff claimed, he was entitled to recover, if the jury found the facts to be as he contended, and whether or not the fellow servant

removed the truck was a question for the jury.  35 U. S. Stat. 65, U. S. Comp. Stat. 1913, § 8658.

2. SAME—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.
Under the Federal act defendant was not discharged from liability on the ground of decedent's contributory negligence in failing to look before stepping down from the baggage car, although his negligence was the proximate cause of the injury: the negligence of the decedent could only be considered in reduction of defendant's liability.

3. SAME—RISKS ASSUMED.
He did not assume the risk of the negligence of his fellow servant in removing the truck without notice to decedent.

Error to Saginaw; Gage, J.  Submitted June 21, 1916.  (Docket No. 73.)  Decided September 26, 1916.

Case by Albert H. Chapman against the United States Express Company for personal injuries.  Upon the death of plaintiff the suit was revived in the name of Mabel D. Chapman, administratrix of decedent's estate.  Judgment for defendant upon a verdict directed by the court.  Plaintiff brings error.  Reversed.

*Purcell & Travers* (*George W. Weadock*, of counsel), for appellant.

*Wilson & Johnson*, for appellee.

KUHN, J.  The plaintiff died on March 14, 1914, from injuries which he received upon October 16, 1912, while in the employ of the United States Express Company, the defendant herein.  This action, instituted by him in his lifetime, was revived after his death in the name of his widow as administratrix of his estate.  The defendant was, at the time of the accident, so far as this case is concerned, a common carrier by railroad engaged in interstate commerce within the

intent and meaning of the Federal employers' liability act of 1908 (chapter 149, 35 U. S. Stat. 65, U. S. Comp. Stat. 1913, §§ 8657-8665). It was conceded at the trial that the express merchandise handled at the time of the accident by the deceased was in a large part interstate commerce, that the Federal act controlled, and that a recovery by the plaintiff, if at all, must be by virtue of said act.

The following facts appeared, or might reasonably be inferred, from the evidence most favorably to the plaintiff, in which light they must be construed in view of a directed verdict for the defendant: The deceased was an express messenger on the Pere Marquette Railway, operating between Bay City and Detroit. At the time he was injured he was about to commence his run from Detroit to Bay City, and the train was due to leave Detroit about 2 o'clock a. m. the morning of the 16th of October. About midnight the deceased and his helper brought up a truck loaded with an iron safe and valuables, and these were placed in the express car; then a truck loaded with bread baskets and general merchandise was brought up, unloaded, and a third truck, loaded with the same kind of merchandise, followed. Among the articles put into the car was one basket of bread, which had been put on the truck by mistake, and which was destined to go on another run. It was taken into the car and left standing there until the other things had been put in their places, and then decedent took hold of one of its handles with the intention and purpose of dragging it back onto the truck, which had been left standing about a foot from the side of the car, and the platform of which was about 10 or 12 inches below the level of the car floor. Chapman, expecting to find the truck where he had left it a few minutes before, stepped off backwards without looking, and, the truck having been moved in the meantime, he fell to the platform, and received severe in-

juries which finally caused his death. At about the time he fell a man known as "New York Slim," alleged to be in the employ of the defendant company, was seen standing by the handle of the truck, which had been moved a few feet from the car door. It is the claim of the plaintiff that there was at this time, and had been for a long period prior thereto, a practice and custom prevailing among the porters and messengers that when a truck was before a car door as this one was, that the truck was not subject to removal without the consent of the person who was in the car. At the close of plaintiff's case a motion for a directed verdict was made by the defendant's counsel, which was denied. Subsequently, and at the close of all the proofs, defendant renewed the motion, and the trial judge thereupon directed a verdict for the defendant.

The sole questions argued in the briefs of counsel relate to the alleged error of the court in directing a verdict for the defendant, and the ruling out by the trial judge of certain evidence claimed to be admissible as part of the *res gestæ*. This ruling will be first considered.

The deposition of Chapman *de bene esse* was taken about two months before the trial, and he testified that after he had fallen out of the car—

"I hollered, 'Who pushed the truck?' and the baggageman said, 'Your own man did.'"

It was objected to as being hearsay evidence, which objection was sustained by the trial court. It is claimed by counsel for the plaintiff that this evidence should have been admitted as part of the *res gestæ*. To this, however, we cannot agree for the reason that the answer of the baggageman which was made in reply to a question cannot be said to have been spontaneous, and therefore lacked one of the essential requirements to bring it within the exception to the hear-

say rule. See *White* v. *City of Marquette,* 140 Mich. 310 (103 N. W. 698) ; *Bernard* v. *Paper Box Co.,* 170 Mich. 238 (136 N. W. 374, 42 L. R. A. [N. S.] 930) ; *Rogers* v. *Railway Co.,* 187 Mich. 490. The case of *Smith* v. *Railway,* 155 Mich. 466 (119 N. W. 640), which it is contended is decisive of this question, did not present a parallel situation, for there the exclamation in question was clearly a spontaneous exclamation; and it was said by the court:

"It was an instinctive exclamation, made immediately as the car started, called out by the apprehended danger of an accident to his wife, by reason of the starting of the car. 24 Am. & Eng. Enc. Law (2d Ed.), pp. 685, 686, and authorities cited."

The circuit judge was clearly right in excluding this testimony.

The following are pertinent sections of the Federal employers' liability act, fixing the liability upon which plaintiff bases his case:

"SEC. 2. That every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. * * *"

"SEC. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of * * * the provisions of this act to recover damages, for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. * * *"

Defendant's counsel urged to the trial court, and now argue in their brief, that there was no evidence of any negligence on the part of the defendant, that

the alleged negligence was not the proximate cause of Chapman's injury, and that Chapman assumed the risk of the fall. The question which, therefore, first presents itself for consideration in this connection is, Was there any proof that an employee of the defendant moved the truck?

George Brennan, who was in the employ of the defendant as a porter, and who was working with the plaintiff in the car at the time of the accident, testified that after Chapman fell he left the car to assist him and pick him up, and that he saw a man known as "New York Slim" standing near the front of the truck near the handle, the truck having been moved out from the car door, and that he appeared to be in a dazed or stupid condition. Chapman, in his deposition, stated that after he fell Brennan, who is frequently referred to in the record as "Irish," immediately came to his assistance, and that he saw the man who had hold of the truck handle and who came with "Irish" and with "Irish" caught hold of him. Roland P. Gougeon, also an employee of the defendant, was in the express car at the time the plaintiff fell out, and stated that he assisted Brennan in picking plaintiff from the floor of the platform; that he did not know a man by the name of "New York Slim" at that time, but that he did work with him that night in the movement of the trucks and the loading of the freight. William G. Irish, who was employed by defendant as a night bill clerk, stated that he was called to the platform, where he found Chapman supported by some of the men, and that he saw Gougeon and Brennan there; that he saw "New York Slim" standing at the head of the truck, leaning against the tongue which was raised and fastened with a hook, the rear end of which was close to the door, and the head end pointed out towards the opposite track. That this man "New York Slim" was a porter, and had to do with drawing express pack-

ages to the cars, drawing them in again, and helping load, and that he was working that night. George E. Cherryman, who was the depot agent for the defendant before and after the accident, but not on October 16th, stated that he knew the man known as "New York Slim," and that he called him "Al," that he had employed him as a porter, and that he was incompetent, and was hired by him after he knew it because he could not get men to stay for the amount of money paid them and the amount of work that had to be done, and that therefore he had to take anybody he could get at the time. These witnesses all gave evidence of the practice and custom of handling trucks in operation at the Detroit station; that when a truck was in front of a car door as this one was it was regarded in use by those within the car. The defendant sought to show by the pay roll that the name of the man known as "New York Slim" was Ralph Bowles and that he was not in the employ of defendant on October 16th, having been discharged October 13th. Cherryman testified, however, that he was positive that Ralph Bowles was not the name of "New York Slim," but he was unable to state what his real name was.

Considering the evidence in the light most favorably to the plaintiff's claim, we are of the opinion that the plaintiff established the elements necessary and essential to entitle him to have the case submitted to the jury. We think that such circumstances were shown as to justify inferences which bring liability within the realm of probability, and under the rule announced in the recent case of *Scott* v. *Railroad Co.*, 182 Mich. 514 (148 N. W. 719), where the Michigan cases are cited, the question should be left to the jury. As was said in *Schoepper* v. *Chemical Co.*, 113 Mich. 582 (71 N. W. 1081):

"Negligence, like any other fact, may be inferred from circumstances. *Alpern* v. *Churchill*, 53 Mich.

613 [19 N. W. 549] ; Barnowsky v. Helson, 89 Mich. 523 [50 N. W. 989, 15 L. R. A. 33]. And, though the proof of plaintiff depended upon inference to establish the main fact, the question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury. Crosby v. Railway Co., 58 Mich. 458 [25 N. W. 463] ; Hagan v. Railroad Co., 86 Mich. 615 [49 N. W. 509] ; Woods v. Railway Co., 108 Mich. 396 [66 N. W. 328]."

See, also, Sewell v. Railway, 158 Mich. 407 (123 N. W. 2) ; Maki v. Copper Co., 180 Mich. 624 (147 N. W. 533).

The testimony on behalf of the plaintiff tends fairly to show that Chapman and his helper had placed the truck load of express packages in front of the express car door; that he and his helper had removed the express packages within the car, including the basket of bread not destined for any points upon his run; that within a minute or so thereafter he had in the ordinary and customary way, proceeded to drag this basket of bread across the car floor to the truck, expecting to find this truck in its position in front of the car door where he had left it; that he slipped out and fell to the platform; that the truck was moved away from the car door, and that immediately after his fall the employee of the defendant known as "New York Slim," or "Al," was seen standing at the head of the truck with his hand on the handle thereof, and that no other person or persons were about; that he seemed to be in a dazed condition and said nothing; that in accordance with the well-established custom and practice Chapman relied upon the truck remaining in front of the car door until he had finished with it. We think that these facts and circumstances were sufficient to justify the inference of negligence on the part of an employee of the defendant.

The learned trial judge was of the opinion that the proximate cause of the accident was the failure of Chapman to look before stepping back onto the truck, and that therefore there could be no liability on the part of the defendant. In this, however, he has apparently confused the alleged contributory negligence of the plaintiff with the negligence on the part of the defendant. Under the Federal statute the contributory negligence of the employee does not bar a recovery, but shall be considered by the jury in diminution of the damages in proportion to the amount of negligence attributable to such employee.

Neither do we think that it can be said that Chapman assumed the risk or the negligence of his fellow employees. The Federal authorities seem to hold that in order to make the negligence of the fellow servant one of the assumed risks under this act, the injured employee must actually know of the fact of the negligence of his fellow servant, or that such negligence was so customary that he would be charged with knowledge thereof. In *Michigan Cent. R. Co.* v. *Schaffer*, 220 Fed. 809 (136 C. C. A. 413), Circuit Judge Dennison refers to the question of assumption of risk as applied to fellow servants under the Federal employers' liability act in the following language:

"* * * By *Seaboard Air Line* v. *Horton*, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Am. & Eng. Ann. Cas. 1915B, 475), it is now settled that the common-law defense of assumption of risk remains in actions brought under this statute, but it is also recognized by recent decisions in this court (*Yazoo* v. *Wright*, 207 Fed. 281, 285, 125 C. C. A. 25, affirmed 235 U. S. 376, 35 Sup. Ct. 130; *Tennessee Co.* v. *Gaddy*, 207 Fed. 297, 298, 125 C. C. A. 41; *Illinois Co.* v. *Porter*, 207 Fed. 311, 314, 125 C. C. A. 55; *Sterling Co.* v. *Hamel*, 207 Fed. 300, 304, 125 C. C. A. 44) that to make the defense good, in

cases depending on the negligence of fellow servants, it must appear: *first,* that the negligence was either in fact known to plaintiff, or was so customary that he must be charged with knowledge; and, *second,* that he must appreciate, or be bound to appreciate, the danger. Both these elements are left out of sight in the claim that a verdict should have been instructed against Schaffer. * * *"

In the case of *Yazoo, etc., R. Co.* v. *Wright,* 235 U. S. 376, 35 Sup. Ct. 130, Chief Justice White said:

"The impossibility of deducing assumption of the risk from the facts stated is cogently demonstrated by the arguments advanced to establish that the risk was assumed. Thus it is urged that, as in a railroad yard there was danger to arise from the protrusion of cars negligently placed by employees of the company, a danger which the engineer must have known might arise, therefore he assumed the risk of such danger. And, again, the argument is that, even although the engineer did not know of the protruding cars, and therefore did not consciously incur the great risk to result from the collision, yet as by proper precaution he could have discovered the fact that the cars were protruding, he must be considered to have assumed the risk which resulted from his want of care. But both these arguments have no relation to the doctrine of assumption of the risk and only call for the application of the principle of contributory negligence or of fellow servant."

In the very recent case of *Chesapeake, etc., R. Co.* v. *De Atley,* 241 U. S. 310 (36 Sup. Ct. 364), Mr. Justice Pitney, speaking for the court, says:

"It is insisted that the true test is not whether the employee did, in fact, know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is not that

it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

This court construed our own statute (Act No. 104, Pub. Acts 1909), involving language similar to that in force in the act here involved, in *Quick* v. *Railway Co.*, 175 Mich. 676 (141 N. W. 631), wherein it was said:

"It is clear to us that the construction given by the court to section 1, which places liability upon a common carrier railroad company for injury to any of its employees for all damages which may result from the negligence of such company, its officers, agents, or *employees,* includes the negligence of all *fellow-servants.* To accept defendant's construction of the statute upon the question of the risk assumed by plaintiff of the negligence of a fellow servant would be entirely out of harmony with the construction of section 1 of the act already given. To hold the company liable for the negligence of its employees (fellow servants of plaintiff), and allow at the same time the defense of assumed risk to be interposed to defeat such liability, would defeat the very object of the statute in attempting to adopt the rule of comparative negligence in this State. This statute must be construed, if possible, as a whole, and harmoniously. The conclusion is unavoidable that section 1, by its express terms, eliminates the doctrine of the assumption of the risk of the negligence of fellow servants in these cases. Such construction does not create a provision looking toward the safety of employees, but one determining the liability of common carrier railroad companies to their employees."

We are of the opinion that the issues involved pre-

sented questions of fact for the jury to determine, and the court, therefore, erred in directing a verdict. The judgment is reversed, and a new trial granted, with costs to the appellant.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.