KNAPP *v.* CHICAGO & WEST MICHIGAN RAILWAY CO.

1. RAILROAD COMPANIES — DEFECTIVE CROSSING — INJURY TO BRAKEMAN—THEORY OF ACCIDENT—CONJECTURE.

In an action against a railroad company for the death of a brakeman, it appeared that the deceased was fatally injured on a dark night while attempting to couple cars at a street crossing; that one of the planks at the crossing between the rails had split off near one end, leaving a space sufficiently wide to admit a man's foot; that deceased's version of the accident, given directly after it occurred, was that "he got caught in the planking between the plank and the rail, and the brake beam pushed him back;" that blood was found on the ground, close to the defect in the planking; that the deceased was picked up about two car lengths from the crossing, and that the space between the rails looked as though a body had been dragged along for that distance. *Held,* that it was not error to refuse to direct a verdict for defendant on the ground that it was purely conjecture as to whether the deceased caught his foot or merely stumbled against the end of the planking.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

The testimony of another brakeman, who saw the deceased go in front of the car which was being backed down for the coupling, to change the coupling link, that that was a part of deceased's duty as a brakeman, and was the proper thing to do, was sufficient to defeat the contention that the testimony showed the deceased to have been negligent as a matter of law.

3. TRIAL—JURY—INSTRUCTIONS AS TO DISAGREEMENT.

At a late hour, the jury were brought in, and instructed how to return a sealed verdict, and were told that, after they had agreed, they might notify the sheriff, who would discharge them until morning. To a question by a juror, "If we don't agree, we stay until we do agree?" the judge replied, "Certainly; the sheriff will not allow you to go." *Held,* to convey the idea to the jury that they were merely to keep together until morning, unless they agreed before, and not that they were to be kept indefinitely unless they agreed.

Error to Oceana; Russell, J.   Submitted April 30, 1897. Decided September 14, 1897.

Case by Nellie Knapp, administratrix of the estate of Lyman H. Knapp, deceased, against the Chicago & West Michigan Railway Company, for negligently causing the death of her intestate.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Frank H. Smith*, for appellant.

*Lovelace & Pringle* and *Brown & Adams*, for appellee.

MOORE, J.   March 29, 1895, at about half past 8 o'clock in the evening, Lyman H. Knapp, an experienced brakeman, who had been in the employ of the defendant for two weeks, received injuries while attempting to couple freight cars at a street crossing, from which he soon afterwards died.   His administratrix brought this action to recover damages for his death, and obtained judgment. Defendant appeals.

One of the errors assigned is that the testimony failed to disclose any liability on the part of the defendant.   It is said by counsel for the defendant that from the evidence no one could say what was the cause of the accident.   It was the claim of the plaintiff that the foot of the deceased caught between the plank and the rail at the crossing, that the brake beam pushed him back, and that the wheels ran over one foot, and over the other leg between the ankle and the knee.   It is the claim of the defendant that the proofs disclose that deceased stumbled against the ends of the four-inch planking at the crossing, was carried forward by the cars for two or three rods, and that at that point the wheels ran over him.   Counsel says that at least this is the more probable solution of the way the injuries were received, and that, as it is purely conjecture how the injuries occurred, the circuit judge should have directed a verdict in favor of the defendant; citing *Manning* v. *Railway Co.*, 105 Mich. 260; *Searles*

v. *Railway Co.*, 101 N. Y. 661; *Borden* v. *Railroad Co.*, 131 N. Y. 671; *Dobbins* v. *Brown*, 119 N. Y. 188; and other cases. An examination of these cases shows that they decide "that when the damages arose from one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail, if his evidence does not show that the damages were produced by the former cause, and he must fail also if it is just as probable that they were caused by one as the other." This is undoubtedly the rule, and the trial judge so understood it. The jury were instructed that the plaintiff must show by a preponderance of evidence that the injuries were produced by a cause for which the defendant was responsible, or there could be no recovery.

There was evidence on the part of the plaintiff tending to show that one of the planks between the rails at the southeast corner had split off near one end, the splinter being from two to four feet long, leaving a space sufficiently wide to let in the foot of a man, and that it had been in that condition some months. The record discloses that when the train was stopped, and Mr. Knapp discovered, he was taken out from under the car, and was questioned as to how the accident occurred. He said "he got caught in the planking between the plank and the rail; the brake beam pushed him back." This testimony was admitted without objection. Some of the witnesses discovered blood on the crossing about two feet from the north end of the plank. Blood was found about six inches from the rail, some on the east rail, and at different places further north; also on the crossing, close to the southeast corner, and on the ground, close to the south end of the plank. The space between the rails looked as though a body had been rolled or slid along in places for a distance of about two car lengths north of the crossing to a point where the injured man was found when the train was stopped. The shoes worn by Mr. Knapp were introduced in evidence. The left heel had been run

over and smashed, the left foot was crushed, and later was amputated just above the ankle. The right leg was crushed just above the ankle, and was amputated a little higher. In view of this testimony, we do not think the court would have been justified in taking the case from the jury. *Crosby* v. *Railway Co.*, 58 Mich. 458; *Carver* v. *Plank-Road Co.*, 61 Mich. 584; *Alexander* v. *City of Big Rapids,* 70 Mich. 224; *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (18 Am. St. Rep. 441).

Some exceptions were taken to the charge of the court. It is not necessary to discuss them further than to say that an examination of the charge shows that they are not well taken. The charge was a full, explicit, and careful statement of the law applicable to the case.

The point is made that deceased did not exercise the caution an experienced and prudent brakeman should exercise in making a coupling on a dark night. That was a question for the jury; and there was testimony from Mr. Wilson, a brakeman, a witness for the defendant, who saw as much of the unfortunate occurrence as any one, as follows:

"I saw Mr. Knapp go in front of the car. I suppose he went in to change the link. That was a part of his duty as a brakeman.

"*Q.* For that reason you took it for granted he went in to perform his duty?

"*A.* Yes, sir; went in to change the link.

"*Q.* That was the proper thing to do?

"*A.* That is what I always do."

The jury decided the question against the defendant, and there was abundance of evidence as to that feature of the case upon which to base their verdict. *Staal* v. *Railroad Co.*, 57 Mich. 239; *Gardner* v. *Railroad Co.*, 58 Mich. 592; *Adams* v. *Iron Cliffs Co.*, 78 Mich. 277 (18 Am. St. Rep. 441); *Ashman* v. *Railroad Co.*, 90 Mich. 576; *Eastman* v. *Railway Co.*, 101 Mich. 602.

Counsel says that the court, having charged the jury, instructed them they must stay out until they had agreed to a verdict. If this had been done by the court just as

stated by the counsel in the brief, it doubtless would have been error.   One cannot read the record, however, without coming to the conclusion that at a late hour, after the jury had been out for a short time, they were brought in, and told by the judge he understood they had not yet agreed.   He was told by a juror they had not been able to agree.   The judge then inquired if there was any use of his waiting any longer then for an agreement, and was told by a juror that he thought not.   He then instructed the jurors how to bring in a sealed verdict, and that, after they had agreed, they might notify the sheriff, who would discharge them until morning; and cautioned them about disclosing their verdict to any one, and to report in court at 9 o'clock in the morning, to return their verdict.   The court then said:

"You may retire again.   If you agree before the incoming of the court in the morning, you may seal up your verdict, notify the sheriff, and you will be discharged.

"*Juror:* If we don't agree, we stay until we do agree?

"*The Court:* Certainly; the sheriff will not allow you to go."

The court and the jurors undoubtedly understood that the jurors were simply to keep together until morning, unless they agreed before, and not that they were to be kept indefinitely unless they agreed.   We do not think the record discloses any reversible error.

Judgment is affirmed.

The other Justices concurred.