## WHITE v. CITY OF MARQUETTE.

EVIDENCE—DECLARATIONS—RES GESTÆ.

In an action for death from injuries, statements of deceased made over a mile from the place of the accident, and an hour afterwards—he not having been unconscious all of the interval, and the statements not having been spontaneous, but elicited by questions—are not admissible as res gestæ.[1]

Error to Marquette; Stone, J. Submitted May 3, 1905. (Docket No. 136.) Decided May 22, 1905.

Case by Almet J. White, administrator of the estate of Jerome White, deceased, against the city of Marquette for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Button & Heffernan*, for appellant.

*George P. Brown*, for appellee.

McALVAY, J. Plaintiff, as administrator of his father's estate, brought suit against defendant to recover damages for injuries received by his father, from which he subsequently died, claimed to have been caused by the negligence of defendant. The facts are that on the 2d day of

[1] As to how near the main transaction declarations must be made in order to constitute part of the res gestæ, see note to *Ohio, etc., R. Co. v. Stein* (Ind.), 19 L. R. A. 733.

August, 1900, plaintiff's decedent, seated in his buggy, was driving his team of horses along a street in the city of Marquette upon which the bridge in question is located; that the pole of the buggy dropped from the neck yoke upon the ground, and the horses became frightened and started to run; that they ran along the street and upon the bridge, when for some reason the buggy swerved to one side, striking the truss of the bridge, and throwing decedent out over the side of the bridge, into the river below. When reached by those who saw him thrown out, he was found partly in the water, with his head under water. He was taken out, set on a stone, and, after a little, became conscious enough to recognize one of his rescuers, and spoke to him by name. He asked more than once about his team, and where his team had gone. One of the witnesses thought his condition was such as not to have permitted an extended conversation; that he was conscious but a short time. He was put into a buggy and driven to plaintiff's house, over a mile away, by a man who testified that he was in a stupor, and that he shook him to rouse him and to keep him from becoming entirely unconscious. He told him to wake up. Deceased spoke a few words to this witness relative to his team. Plaintiff saw his father as he was brought to his house, and helped get him into the house. He testified that he got some water and washed him and put him to bed.

"As soon as he got to bed and commenced to know where he was, he said he didn't know where he was before.

"*Q.* You say he didn't know where he was until after you had washed him and dressed him and got him in bed?

"*A.* He didn't seem to pay any attention, and he didn't say anything. * * *

"*Q.* Until you got him in bed?

"*A.* Until I got him in the house.

"*Q.* Until you got him in bed?

"*A.* I wouldn't say for sure whether he recognized me when we were getting him into the house or not."

This was about 5, or half past, in the afternoon. Witness did not remember whether he showed signs of consciousness or not, or whether he spoke before being put to bed. Witness was then asked:

" *Q.* What, if anything, did your father tell you as to this accident on this day, when he first came to consciousness so that he could talk ? "

This was objected to as immaterial and incompetent to show what he said after being removed from the scene of the accident.

" *The Court:* The question is not only objectionable for the reason stated, but it does not appear, and it might be important to know, whether it was something that was voluntarily expressed, like an ejaculation, or whether an interrogation, or a long-continued conversation, in which this witness tried to draw out something and go into the transaction. It might be well for the court to know something about that."

Thereupon the court asked the witness the following questions:

"*Q.* In what he did say to you, was it in answer to your questions, or not?

"*A.* Yes, sir.

"*Q.* Before broaching that subject, how long did you talk with him ?

"*A.* Oh, not a great while; just asked him how he felt.

"*Q.* And what else ?

"*A.* And if he was hurt bad.

"*Q.* What else, if anything ?

"*A.* I don't know as anything more was asked him.

"*Q.* Then you asked him how it happened ?

"*A.* Yes.

"*Q.* And then came the answer you were asked to give ? In telling how it happened, did he go on and relate how it happened, himself ?

"*A.* Yes; he related just how it started.

"*Mr. Button:* That there may be no misunderstanding, I would like to ask one more question.

"*Q.* I understand this conversation with your father took place as soon as he recovered consciousness enough to carry on a conversation. Is that true ?

"*A.* Yes."

The court then refused to allow the plaintiff to testify to what was told him by deceased as to how the accident happened.

The claim of the plaintiff was that the team of decedent shied at a hole in the planking of the bridge, causing the wagon to run upon the truss, from which the injury resulted. Negligence is charged against defendant in not keeping the bridge in repair. Plaintiff also claimed that the statement of deceased, offered in evidence, as to how the accident occurred, was admissible as part of the res gestæ. There were no witnesses produced who saw the horses swerve to one side while on the bridge.

The trial court held that the statement offered was not admissible; that it was the narrative of a past event, called out by the questions of plaintiff. The only question before the court in this case is whether the judge erred in so holding. No evidence was offered by defendant, and a verdict was directed in its favor on motion. Afterwards, upon motion for a new trial by plaintiff, the main question in the case was argued at length. The circuit judge, in a well-considered opinion, which is printed in full in defendant's brief, denied the motion. He arrived at the conclusion that in this case, where the statement offered in evidence had been made a long distance away from the scene of the accident, and more than an hour after it occurred; when it appeared that deceased during part of the time had been sufficiently conscious to recognize an acquaintance and to ask about his horses, such statement, having been drawn out by the questions of the witness, was in the nature of a narrative of a past event, and therefore hearsay; that it was not a voluntary and spontaneous statement, and could not be considered as part of the res gestæ.

The authorities, in discussing the question of the admissibility of statements of injured persons in these cases, have laid down certain propositions upon which there is

practical unanimity, which, briefly stated, are as follows: If such statement is made at or near the time and place of the accident, is spontaneous, and so closely connected with the occurrence as to be evoked or prompted by it, it becomes part of the transaction itself, and is admissible as res gestæ. On the other hand, narrations not the natural and spontaneous outgrowth of the occurrence, and so far separated from the act they are alleged to characterize that they are not a part of it, and so connected with it as to receive credit from it, are purely narratives of a transaction already past and completed, and are hearsay. For a consideration of the questions involved, see *Missouri, etc., R. Co.* v. *Moore,* 24 Tex. Civ. App. 489; *Johnson* v. *State,* 65 Ga. 94; Gillett on Indirect & Collateral Evidence, § 258; *Chicago, etc., R. Co.* v. *Chancellor,* 165 Ill. 438. The above is not claimed to be a full and complete statement of the holdings of courts in such cases. No hard and fast rule can be laid down which will apply to every case, but each case must be considered in connection with the circumstances surrounding it. In view of the attempts which have been made by the courts to determine these cases on precedent, a learned writer has urged that the question should always be left as one of discretion with the trial judge. (3 Wigmore on Evidence, p. 2257.)

One of the incidents of the case under consideration, which in some measure makes it less easy of solution, is the claimed unconsciousness of decedent during the period of time which elapsed between the injury and the statement relied upon. The mere fact that the statement was made at a distance from the place of the accident is of itself not material, but the length of time intervening before the statement was made, and the condition of decedent during that period, and the circumstances under which the statement was made, all taken together, are of vital importance. Some authorities hold that voluntary, spontaneous statements made immediately after a period of unconsciousness, even at a distance from the place of acci-

dent, may be received as a part of the res gestæ.    24 Am.
& Eng. Enc. Law (2d Ed.), p. 685, and cases cited.    The
undisputed testimony shows that decedent was not uncon-
scious during this entire time.    He very soon after the ac-
cident recognized one of his rescuers.    He talked of his
team intelligently.    He also talked concerning his team
to the man in the buggy who drove him to his son's home.
The son is not certain that his father did not recognize
him while being taken into the house.    He says he did
not talk.    The statement sought to be introduced was
made in answer to questions put by the son to his father
after he had been bathed and put to bed.    Considering the
circumstances of this case, and applying the rules upon
which the authorities are harmonious, when such state-
ments will be admitted as res gestæ, we find that decedent
made this statement over a mile away from the place
where the accident occurred, and an hour afterwards; that
he was not unconscious during all of this interval; and
that the statement was not spontaneous and voluntary,
but was drawn out by questions put by the plaintiff.    It
was therefore not res gestæ, but the narrative of a com-
pleted event, and was not admissible.

The circuit judge did not err in excluding the statement
offered.    As there was no evidence in the case tending to
show negligence on the part of defendant, the direction of
a verdict for defendant was proper.

The judgment is affirmed.

MOORE, C. J., and CARPENTER, BLAIR, and HOOKER,
JJ., concurred.