GILBERT *v.* ANN ARBOR RAILROAD CO.

1. EVIDENCE — HEARSAY — RES GESTÆ — DECLARATIONS OF DECEASED.

As a part of the *res gestæ*, declarations made by plaintiff's intestate, knowing that he was dying, immediately after being carried 400 feet from the place of his injury, that he stepped into a hole in defendant's scales on the track, are competent in an action for his death while acting as defendant's brakeman.[1]

2. NEGLIGENCE—MASTER AND SERVANT—RAILROADS—DEFECTS IN ROADWAY.

The existence of a hole in the platform of scales on defendant's track in a place not readily to be observed, being undisputed, the question of defendant's negligence in failing to provide a reasonably safe place for its brakemen to perform their duties was for the jury.

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE—DEATH.

An employé killed by reason of alleged neglect of his employer is, in the absence of any evidence to the contrary, presumed to have exercised due care.

4. SAME—ASSUMED RISK—OBVIOUS DANGERS.

The obvious character of the risk and decedent's knowledge of danger arising from the defect were questions of fact.

5. SAME—DEFENSES—NEGLIGENCE.

The alleged defense that deceased caught his foot between the rails of the main and scales track, if supported by evidence, was for the jury.

Error to Benzie; Chittenden, J. Submitted February 15, 1910. (Docket No. 178.) Decided April 1, 1910.

Case by Genevra Gilbert, administratrix of the estate of Arthur Gilbert, deceased, against the Ann Arbor

---

[1] As to admissibility of declarations of injured party as part of the *res gestæ*, see note to *Ohio & Mississippi R. Co.* v. *Stein* (Ind.), 19 L. R. A. 748.

Railroad Company for the negligent killing of plaintiff's intestate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*D. G. F. Warner, Smurthwaite & Alway,* for appellant.

*Benjamin S. Warren* and *Codd & Drake,* for appellee.

Brooke, J. This action is brought to recover damages on account of the death of Arthur Gilbert, plaintiff's decedent, caused, it is alleged, by the negligence of the defendant. It appears that Gilbert was a switchman, 31 years of age. He had been employed by the defendant for about three years prior to his death. He worked in defendant's yard at South Frankfort, where defendant's line connects with car ferries, owned and operated by it, across Lake Michigan. Upon the main track, about a car length from the switch to the car ferry slip, is a scale for weighing cars. The north side of the main track rests on a solid timber, which forms the northerly wall of the space dug out of the ground to make room for the proper operation of the scales. The south rail of the main track also rests upon timber, extending lengthwise over the scales, but so supported that the weight of cars, passing over it, does not affect them. Upon the platform of the scales, a track is laid, which is connected with the main track by a switch, some distance from the scales, upon which track cars are run to be weighed. The distance between the north rail of the main track and the north rail of the scales track is 10¾ inches, and the rails upon both tracks are 4½ inches high.

The negligence charged against defendant is that it did not furnish to plaintiff's decedent a safe place in which to perform his duties as its employé, in that it permitted the platform of the scales, at the northwest corner thereof, to

become broken to such an extent that there was a hole therein, about three inches wide by six inches long, in a narrow and obscure place, between the rail of the main track and the rail of the scales track.   About 6:30 o'clock on the morning of December 11, 1907, while it was yet dark, the switch crew, of which Gilbert was switchman, were engaged in loading cars from the yard upon car ferry No. 4.   The locomotive pulled 11 cars out upon the main track beyond the scales, so far easterly, that the most westerly car was over the platform of the scales.   It was intended to push those cars upon the track, running to the ferry slip, upon which was another freight car, which it was necessary to couple with the last car connected with the locomotive.   Gilbert turned the switch to the side track, signaled the engineer to back, and stepped forward to turn the knuckle upon the last car in the train.   After performing this duty, he stepped between the rails at the place described, and it is claimed his foot slipped into the hole in the platform of the scales, above described, that he was unable to release it, and was caught by the moving cars and dragged along the track about 100 feet, when the car ran over him, and so injured him that he died about three hours later.   Testimony was introduced by the plaintiff, tending to show that Gilbert, at the time of his injury, was in the regular course of employment, and was performing his duties in the usual, regular, and ordinary manner.   It was claimed by the defendant that the injury might have been caused by the catching of the foot between the rails, instead of in the hole in the platform; also, that Gilbert should not have signaled the engineer to back the train until after he had opened the knuckle of the car; also, that the hole in the platform had been there for some time, and the deceased must have known thereof, and therefore he assumed the risk.

A verdict was directed for the defendant, in the court below, in the following language:

" The defendant asks the court to instruct the jury to render a verdict of no cause of action on three grounds: *First,* that the plaintiff assumed the risk; that is, if there was any danger there, that he must have known of it, having passed over the place in question a great many times and knew its condition; therefore, if there was any danger there, he assumed the risk. The second ground is that he himself was guilty of contributory negligence; that is, if there was danger there, that there was another way in which he could have done the work which would have been a perfectly safe way to do it, and by doing it the way he did do it he was guilty of contributory negligence. While I feel that in both of these contentions the scale of justice and the measure of law falls on the defendant's side and weighs the more heavily on his side, nevertheless the main point with the court and the question that brings the court to his decision is the third ground raised: That the plaintiff has failed to show that this deceased was injured by reason of the hole that they claim existed in these scales. There is absolutely no testimony that this man ever stepped into or through this hole. There is testimony on the part of the defense that this hole was surrounded by new snow, that it was only 2¾ by 5 inches, and that the snow was fresh and new around it, and there were no marks of any one ever getting through it. Now, if some witness had testified that this man did step through or into this hole, and this other testified that the snow was there around it, and nobody could have stepped through it, that would be a question for the jury, and it would be my duty to submit this question to you. But there is no testimony that this man ever stepped through this hole. The only possible testimony that could possibly lean that way is the statement of this man, the deceased, that he stepped into a hole in the scales. He doesn't say what hole, or anything about it, and if I were to submit this case to you it would be asking the jury to guess whether or not he stepped into a hole, and, if so, which one."

The plaintiff has removed the case to this court for review, upon writ of error. The first question to be considered is whether or not there was any competent evidence tending to show that Gilbert received the injury, which resulted in his death, in consequence of having caught his foot in the hole in the scales. Upon this point, John Goth-

als, a witness sworn for the plaintiff, who was employed as fireman upon the switch engine, testified as follows:

"I saw him first that morning lying on the rails close to the switch, about 100 feet west of the scales. I was the first man to him. He spoke to me. He said: 'Telephone my wife. I am dying.' The next person to come up was Henry Wagner. He was yardmaster. We took him to the depot, about 400 feet from there. When we got him to the depot, he said that he got his foot caught in the hole in the scales, and he could not get his foot out in time, and he was run over by the cars and caught by them. I looked to see whether there was any appearance that he had been shoved or dragged on the ground, and saw marks on the ground where something had been dragged. These marks stopped where he laid, and started up near the scales."

Henry Wagner, defendant's yardmaster at South Frankfort, testified as follows:

"Mr. Gothals was there about the time I got there. The first statement I heard him make, he said the hole in the scales got his foot. He did not say how he came to be there where he was. It showed where he had been dragged there. His body had been dragged on the snow. It snowed a little on that night, about an inch, and it was apparent, from the indications there on the snow, that his body had been dragged from the scales, north. I saw the hole in the scales right at the end of the scales between the scales rail and the main track. The tracks were 10¾ inches apart."

William Shafer testified for plaintiff as follows:

"I saw Gilbert lying on the table in the depot, about half past 7 in the morning. I said to him, 'How did it happen?' He said: 'I got my foot in the hole in the scales, and I could not get it out. I grabbed the side of the car, but it did not do me any good.' I examined the holes in the scales between 9 and 10 that morning. They had already plugged the holes up. The hole in the northwest corner, I should judge, was about 3 inches wide and about 8 or 10 inches long."

All the foregoing testimony, relating to the declaration

of Gilbert, was received over defendant's objection that it was inadmissible as not being part of the *res gestœ*, and it seems that, though admitted, it was not considered by the learned circuit judge, as he directed a verdict mainly upon the ground that there was no testimony tending to show that Gilbert was injured by reason of the hole in the scales.

Was the testimony of Gilbert's declaration admissible as part of the *res gestœ*, and should it have been considered? It will be remembered that the declaration was made by Gilbert to Gothals and Wagner, after they had carried him about 400 feet to the depot; they having reached him immediately after his injury was received. Under the circumstances disclosed by the record in this case, we are of opinion that their testimony was admissible and should have received proper consideration. In the late case, *White* v. *City of Marquette*, 140 Mich. 310 (103 N. W. 698), this court said:

> "If such statement is made at or near the place of the accident, is spontaneous, and so closely connected with the occurrence as to be evoked or prompted by it, it becomes part of the transaction itself, and is admissible as *res gestœ*. On the other hand, narrations not the natural and spontaneous outgrowth of the occurrence, and so far separated from the act they are alleged to characterize that they are not a part of it, and so connected with it, as to receive credit from it, are purely narratives of a transaction, already passed and completed, and hearsay"—citing cases.

See, also, *Knapp* v. *Railway Co.*, 114 Mich. 199 (72 N. W. 200); *Jones* v. *Village of Portland*, 88 Mich. 598 (50 N. W. 731, 16 L. R. A. 437); *Lendberg* v. *Mining Co.*, 75 Mich. 84 (42 N. W. 675); *Keyser* v. *Railway Co.*, 66 Mich. 390 (33 N. W. 867); 16 Cyc. p. 1152 *et seq.*, and cases cited.

It was urged by the defendant that there was no evidence of negligence on its part. We are unable to agree with this view. The existence of the hole in the scales platform for a considerable period is not disputed. That it was in an obscure place, not readily to be observed,

seems obvious.    Plaintiff's decedent was entitled to a reasonably safe place in which to perform his duties. Whether or not the defect complained of was such as to render the place unduly dangerous was a question of fact to be determined by the jury under proper instructions.

Was plaintiff's decedent guilty of contributory negligence, as a matter of law ?    We have frequently held that, in a negligence suit, where there is no eyewitness to the accident, it will be presumed, in the absence of any evidence to the contrary, that the deceased used ordinary care and caution, which presumption is sufficient to permit recovery, if negligence is shown on the part of the defendant.    *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (44 N. W. 270, 18 Am. St. Rep. 441), and cases there cited; *Underhill* v. *Railway Co.*, 81 Mich. 45 (45 N. W. 508); *Grostick* v. *Railroad Co.*, 90 Mich. 608 (51 N. W. 667). See, also, *Chesapeake, etc., R. Co.* v. *Steele*, 84 Fed. 93, 29 C. C. A. 81, and note.    But aside from the presumption, the evidence of the yardmaster was to the effect that plaintiff's decedent was performing his duties in the usual and ordinary manner.    The question of his negligence, like that of the defendant, was for the jury.

Defendant claimed that, whatever defect there was in the track, the plaintiff's deceased had an opportunity, equal with others, to know of it and guard against it, because it was plainly open to observation, and therefore he should be held to have assumed the risk.    Defendant had the right to show the obvious character of the danger and the opportunity for knowledge thereof possessed by decedent.    It then became a question of fact for the determination of the jury, under proper instructions, whether decedent knew of the defect, or by the exercise of ordinary care and prudence should have known of it.

It was defendant's theory that decedent came to his death by reason of catching his foot between the rails of the main and scales tracks.    It had the right to have that theory presented to the jury, if supported by any evidence.

Some other errors are assigned upon the admission of testimony, which we do not consider. They are not likely to arise upon another trial.

Judgment reversed, and a new trial ordered.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.