HYATT *v.* LEONARD STORAGE CO.

1. EVIDENCE—ADMISSIONS—CORPORATIONS—EMPLOYEES.

In an action to recover for personal injuries sustained by an interurban car passenger as the result of a collision between such car owned by defendant railway company and a moving van owned by another defendant, a storage company, *held*, that conversations between the driver of the moving van and the superintendent and the motorman of the railway company more than a half hour after the accident as to its cause, were not admissions of the storage company, and admissible as such against it, as such driver was not an agent authorized to admit facts or make statements involving liability of his principal.[1]

2. SAME—RES GESTAE.

The conversations as to the cause of the accident with the driver of the moving van were not admissible as part of the *res gestæ.*

3. APPEAL AND ERROR—PREJUDICIAL ERROR—CONVERSATIONS.

The erroneous admission of conversations as to the cause of a collision between an interurban car and a moving van, in an action by a passenger on the interurban car against the railway company and the owner of the moving van to recover for personal injuries sustained in the collision, was prejudicial error, where they were probably controlling of the verdict in the case.

[1]On admission in evidence of statements made some time after accident as *res gestæ*, see note in 42 L. R. A. (N. S.) 917.

Error to Oakland; Smith, J. Submitted April 6, 1917. (Docket No. 82.) Decided May 31, 1917.

Case by Manly Hyatt against the Leonard Storage Company and the Detroit United Railway for personal injuries. Judgment for plaintiff against defendant storage company, which brings error. Reversed.

*Bishop & Kilpatrick*, for appellant.

*Charles S. Matthews*, for appellee.

*James H. Lynch*, for defendant railway.

STONE, J. This action was brought jointly against the Detroit United Railway and the Leonard Storage Company to recover damages for personal injuries received by the plaintiff.

On June 30, 1915, at about 12:05 a. m., the plaintiff boarded an interurban car owned and operated by the defendant the Detroit United Railway and running between the cities of Detroit and Pontiac. He boarded the car at the 6-mile road just outside the city of Detroit, and paid his fare to the city of Pontiac. After riding about 30 minutes a collision occurred between the car in which plaintiff was riding and a moving van belonging to the defendant the Leonard Storage Company. The collision occurred at the intersection of the 11½-mile road with Woodward avenue. This intersection was a regular crossing for traffic over said road across the Detroit United tracks to Woodward avenue. The tracks were filled in so that the top of the rail and the roadbed were level, and the intersection was a regular road crossing over the interurban track. The interurban tracks at this point ran parallel with Woodward avenue, along the east side, so that to reach Woodward avenue from a position on the 11½-mile road east of the avenue it was necessary to first cross the interurban tracks.

The plaintiff received injuries, the nature and extent of which we need not describe. There is no claim that he was guilty of contributory negligence. The moving van was being driven by one Arthur E. Sutton. He had been delivering for the defendant the Leonard Storage Company a load of furniture at a house a short distance east of Woodward avenue and the railroad tracks, on the 11½-mile road. After delivering the furniture the van was driven west on said road, and it is the claim of said defendant the Leonard Storage Company that it started to cross the interurban track onto Woodward avenue, both its head and tail lights being lighted. That the tail light was lighted was disputed by the motorman. It was the claim of said defendant that it was while the van was on this intersection that the collision occurred, although there was evidence tending to show that the van was 200 feet down the track, and practically on the track, "the same as the car was," and going toward the 12-mile road, so called. There was evidence that there was a very dense fog, that the headlight of the interurban car did not show more than 50 feet ahead, and that the motorman could not see farther than this distance ahead of his car. He testified that at the time of the accident he was going as fast as he could, and that he did not blow the whistle when he saw the van. On cross-examination he testified:

"I could not see over 50 feet ahead of my car. Above my controller, on the street car, there is a rule of the street car company that on a foggy night you must keep your car under control so you can stop within the distance you can see ahead. I did not have my car under control so I could stop it within 50 feet. My car traveled quite a ways after it struck the truck. I was running my car about as fast as it would go at this point."

There was other testimony that it was going about 45 or 50 miles an hour, and went about a quarter of

a mile after the accident before it stopped. The van was thrown to the side of the tracks a distance of 30 or 40 feet north of the 11½-mile road.

The trial resulted in a verdict and judgment for $1,000 damages against the defendant the Leonard Storage Company and a verdict and judgment in favor of the defendant the Detroit United Railway. The defendant the Leonard Storage Company has brought the case here on writ of error. There are a number of assignments of error, but in our view of the case it is only necessary to discuss the 5th and 7th.

The 5th assignment of error is to the effect that the court erred in admitting over objections and exceptions the following testimony of the witness Mr. Peters: This witness was examined by the attorney for the Detroit United Railway, and he testified on direct examination as follows:

"I am employed by the Detroit United Railway as superintendent. I recall the time of the accident. I was at the accident; I arrived about a half hour after it happened.

"Q. And were the men who were in charge of the car there?

"A. One of them was there.

"Q. Now, did you have any talk with him in regard to how the accident happened?

"A. Yes, sir.

"Q. What did he say?

"Mr. Barbour: I object to that conversation he had with somebody. What a man might say that was working for you is not binding on the Leonard Storage Company.

"The Court: It is a corporation, is it not?

"Mr. Barbour: Yes, your honor.

"The Court: What do you say about a company being bound by a statement of an employee? I think it is admissible. You may take it. (Exception.)

"Q. What did he say; that is, I mean with reference to where it was and how it came there?

"A. Well, you want me to relate the conversation?

"*Q.* No; answer the question just as it is, what did he say with reference to where he was and why he was there?

"*Mr. Barbour:* I object to that. Give me an exception. (Exception.)

"*A.* He said he was on the way to the 12-mile road, and he thought the last car was gone, and he was told so by the people of that vicinity, and he waited two hours for it to go.

"*Q.* Did you have any talk with the man in charge of the van in regard to these rails that night at that time?

"*A.* Yes, sir.

"*Mr. Barbour:* I object to that question.

"*The Court:* That is covered by the other ruling.

"(Exception.)"

The seventh assignment of error complains of the overruling of the objections to the following testimony given by Fred Schultz, the motorman of the wrecking crew, in regard to a conversation alleged to have been held with the employees of the Leonard Storage Company 30 minutes after the accident:

"*Q.* Did you see the man who operated the van that night?

"*A.* Yes, sir.

"*Q.* Did you have any talk with him how the accident occurred?

"*A.* Yes, sir.

"*Mr. Barbour:* I make the same objection and take an exception.

"*Q.* What conversation did you have with him there? (Exception.)

"*Q.* Tell the conversation, what you said to him and what he said in reply.

"*A.* I asked him how he happened to be on the track out there like that on a foggy night like that was and 'Why,' he says, 'I was going to the 12-mile road to go across,' and I says, 'I shouldn't think you would take a chance on a night as foggy as this and go on the track.'

"*Mr. Barbour:* I object to that.

"*The Court:* May remain. (Exception.)

"*Q.* What reply?

"*A.* I says, 'I shouldn't think you would want to take a chance on your own risk of going on a track on such a night as this when it was so foggy as this.' 'Why,' he says, 'they told me—I asked a fellow there, and he said that the last car had gone north,' and I says, 'Where were you going this way,' and he says, 'Why, I was going down the track to the 12-mile road and then going across, and then going back to the city.'

"*Mr. Barbour:* I ask that that be stricken out as being hearsay, not only hearsay, but what somebody else told him.

"*The Court:* Motion overruled. (Exception.)"

That this testimony of the statement made by Sutton was deemed important, if not controlling, in the case, appears by the following excerpt from the charge of the court:

"If the jury believe that on the night in question Mr. Sutton entered upon the easterly track of the defendant Detroit United Railway with the intention of proceeding northerly thereon to reach the 12-mile road, then I charge you that whether or not he was negligent is a question of fact for the determination of the jury. * * *

"On the part of the defendant Leonard Storage Company I charge you that the crossing at the 11½-mile road on Woodward avenue is a public highway crossing, and that the Leonard Storage Company had a right to the use of said crossing and was not guilty of any negligence merely by being on and using said crossing for the purpose of travel. But I mean no more in giving you that than this, gentlemen, that the storage company's van and driver of that van, had a right merely to pass from the east side of the steam road or the side of the electric road across both tracks to the west side. I don't mean to say he had a right to stop as long as he wanted to, if he did stop. That means no more than he had a right to use it for the purpose of traveling across it in the usual manner, or in such a way as would be proper and usual for a van of that nature, and I add this: It is due the other parties to this suit that I call attention to their claim that

the storage company's van was doing more than using the crossing, to wit, that the van was in the act of turning north to use the railway track to the 12-mile road. Now, you will take that into consideration in connection with the request I gave you."

The record shows that the driver, Sutton, was in Florida at the time of the trial. Upon a motion for a new trial upon the ground of newly-discovered evidence the affidavit of said Sutton denies that he made any such statement as was claimed by the witnesses, and denied that he was attempting to use the trolley track as a roadway.

It is urged by the appellant that the judgment below should be reversed because the court erred in admitting in evidence the testimony of the said superintendent and the motorman of the wrecking crew as to the conversations alleged to have been held more than one-half hour subsequent to the collision, with the driver of the van; this testimony being purely hearsay in character, and not admissible under any rule of law. It is said:

(1) That the conversations could not properly be introduced as admissions on the part of the defendant the Leonard Storage Company.

(2) That such conversations could not properly be admitted as constituting a part of the *rest gestæ.*

1. It is argued, and we think properly so, that the alleged conversations could not be legally introduced as admissions of the defendant the Leonard Storage Company, because the driver was not an agent authorized to admit facts or to make statements involving the liability of his principal. This rule is well stated in 16 Cyc. p. 1008:

"It is to be observed that in the law of agency it is no part of an agent's duty to prejudice his principal by narrative statements construing or otherwise affecting his principal's rights or liabilities, or to discuss the propriety of his conduct even in relation to the subject-

matter of the agency. On these grounds, rather than that of irrelevancy, rests the broad general rule that an agent's narrative of a past transaction does not affect the principal."

Prof. Wigmore, in his work on Evidence, discusses this question at section 1078, and says:

"The most difficult field in the application of this principle is that of *tortious liability.* For example, if A. is an agent to drive a locomotive, and a collision ensues, why may not his admissions after the collision, acknowledging his carelessness, be received against the employer? Because his statements under such circumstances are not made in performance of any work he was set to do."

This doctrine is in accord with the numerous decisions of this court: *Horner* v. *Fellows,* 1 Doug. (Mich.) 51; *Benedict* v. *Denton,* Walk. Ch. (Mich.) 336; *Canadian Bank of Commerce* v. *Coumbe,* 47 Mich. 358, 366 (11 N. W. 196); *Andrews* v. *Mining Co.,* 114 Mich. 375 (72 N. W. 242); *Maxon* v. *Railroad Co.,* 117 Mich. 218 (75 N. W. 459); *Hall* v. *Murdock,* 119 Mich. 389 (78 N. W. 329); *Mott* v. *Railway Co.,* 120 Mich. 127, 133 (79 N. W. 3).

In the *Andrews Case* the trial court permitted the coroner of the county to testify to the contents of the deposition of Captain Maslin, who had been sworn at an inquest. This court said:

"The court was in error in permitting this deposition to be read. It was not offered for the purpose of impeaching Captain Maslin, but for the purpose of proving a substantive fact; that is, that Maslin knew the mine was in a dangerous condition when he ordered the men in there. It is conceded that it was no part of the *res gestæ.* It has many times been held by this court that the declarations of an agent as to a past transaction are inadmissible to bind the principal. *Michigan Cent. R. Co.* v. *Coleman,* 28 Mich. 440; *Mabley* v. *Kittleberger,* 37 Mich. 360; *Patterson* v. *Railway Co.,* 54 Mich. 91 [19 N. W. 761]; *Stebbins* v. *Township*

*of Keene,* 55 Mich. 552 [22 N. W. 37] ; *Wormsdorf* v. *Railway Co.,* 75 Mich. 472 [13 Am. St. Rep. 453]."

2. It appears to be the claim of the appellees that those statements were admissible as part of the *res gestæ,* and that they fall within the rule stated in *Keyser* v. *Railway Co.,* 66 Mich. 390 (33 N. W. 867) ; *Smith* v. *Railway,* 155 Mich. 466 (119 N. W. 640) ; *Gilbert* v. *Railroad Co.,* 161 Mich. 73, 78 (125 N. W. 745) ; *People* v. *Johnson,* 186 Mich. 516, 521 (152 N. W. 1096) ; *Jolman* v. *Alberts,* 192 Mich. 25 (158 N. W. 170).

We are of the opinion that all of the foregoing cases can be distinguished from the instant case, which we think is controlled by the following decisions of this court: *White* v. *City of Marquette,* 140 Mich. 310 (103 N. W. 698) ; *Bernard* v. *Paper Box Co.,* 170 Mich. 238, 241 (136 N. W. 374, 42 L. R. A. [N. S.] 930) ; *Rogers* v. *Railway Co.,* 187 Mich 490, 493 (153 N. W. 784) ; *Chapman* v. *Express Co.,* 192 Mich. 654 (159 N. W. 308).

In the *Bernard Case* Justice MCALVAY used the following quotations:

" 'The statements of an agent, when made in the course of his employment, and while engaged in the business of his principal, are binding upon the principal, because they are part of the *res gestæ;* but no agent is employed to make admissions outside of his employment. * * * In the case of *Vicksburg & Meridian Railroad* v. *O'Brien,* 119 U. S. 106 [7 Sup. Ct. 118], the court, quoting Mr. Justice Strong [*Northwestern Packet Co.* v. *Clough*], 20 Wall 541, states the principle of the rule to be that, "The agent to do the act is not authorized to narrate what he had done and how he had done it, and his declaration is no part of the *res gestæ." Hall* v. *Murdock,* 119 Mich. 390 [78 N. W. 329].'

" 'We think there was no error in excluding this testimony. The injury had already occurred. It became a matter of narration, and was not even narration of

the incident, but of the cause which led to the incident. We think the question was within the ruling of this court in *Andrews* v. *Mining Co.*, 114 Mich. 375 [72 N. W. 242] ; *Michigan Cent. R. Co.* v. *Coleman*, 28 Mich. 440.' *Dompier* v. *Lewis*, 131 Mich. 144 [91 N. W. 152]."

In *White* v. *City of Marquette, supra,* this court said:

"If such statement is made at or near the time and place of the accident, is spontaneous, and so closely connected with the occurrence as to be evoked or prompted by it, it becomes part of the transaction itself, and is admissible as *res gestæ*. On the other hand, narrations not the natural and spontaneous outgrowth of the occurrence, and so far separated from the act they are alleged to characterize that they are not a part of it, and so connected with it as to receive credit from it, are purely narratives of a transaction already past and completed, and are hearsay."

The distinction between the two classes of cases is well defined. We are of the opinion that the conversations testified to were no part of the *res gestæ*.

One cannot read this record without being impressed with the fact that the testimony here complained of was probably controlling of the verdict in the case, and we think, therefore, that its reception was prejudicial error.

Other questions discussed by counsel are not likely to arise upon a new trial.

The judgment of the court below is therefore reversed as to both defendants, with costs to the appellant against plaintiff and defendant Detroit United Railway.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.