METCALF *v.* PEERLESS LAUNDRY & DYE CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE — QUESTION FOR JURY.

In an action for personal injuries caused by plaintiff's being struck by defendant's truck at a street intersection while he was in a safety zone about to board a street car, the question of plaintiff's contributory negligence, *held*, under the evidence, for the jury under proper instructions.

2. SAME—SAFETY ZONE—RIGHT TO RELY ON TRAFFIC ORDINANCE.

After plaintiff, whose view was obstructed by a parked automobile, looked to the west as he entered upon that part of the street prescribed as a safety zone by the city

On duty of pedestrian in street to watch out for automobiles see notes in 1 L. R. A. (N. S.) 215; 3 L. R. A. (N. S.) 345; 20 L. R. A. (N. S.) 232.

On excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

traffic ordinance, he was not required to continually look to the west to see that he was not injured, but he had a right to assume that the driver of defendant's truck would not violate the traffic ordinance by driving on the prohibited part of the street.

3. SAME—EVIDENCE—ADMISSIONS — APPEAL AND ERROR — MISCAR-
   RIAGE OF JUSTICE.

   Testimony by a policeman as to a statement made to him by defendant's driver some time after the accident happened, admitting that he was to blame for driving upon the safety zone, while inadmissible, *held*, not reversible error, where the driver had already testified to a state of facts not inconsistent with said admission, and it cannot be said that its reception resulted in a miscarriage of justice (3 Comp. Laws 1915, § 14565).

4. SAME—EVIDENCE—ADMISSIBILITY—IMPEACHMENT.

   Where defendant's driver testified upon the trial that he did not tell defendant that he did not have a driver's license, a signed statement by the driver, made five months after the accident happened, that he did tell defendant that he had no driver's license was admissible for the purpose of contradicting him upon that point.

5. NEW TRIAL—EVIDENCE—WEIGHT OF EVIDENCE.

   *Held*, that the verdict for plaintiff was not against the weight of the evidence, and the trial court was not in error in refusing a new trial.

6. DAMAGES—EXCESSIVE VERDICT.

   Where there was evidence of much pain and suffering on the part of plaintiff as a result of the injury which was of a permanent nature, a verdict for $2,000 cannot be said to be excessive.

Error to Saginaw; Browne (Clarence M.), J. Submitted June 9, 1921. (Docket No. 36.) Decided October 3, 1921.

Case by Elmanzor B. Metcalf against the Peerless Laundry & Dye Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Purcell & Tessin,* for appellant.

*John F. O'Keefe,* for appellee.

STONE, J.   This case is here upon writ of error sued out by the defendant to review a judgment of $2,000 for the plaintiff for personal injury to plaintiff by reason of the claimed negligence of the defendant.   The plaintiff, a man 72 years of age, was injured on April 25, 1919, by being struck by an automobile delivery truck owned by the defendant, and being driven by an employee of the defendant, near the intersection of Bristol street and Washington avenue, in the city of Saginaw, as plaintiff was in the act of going from the south curb towards the street car track in Bristol street.   South Washington avenue at Bristol street runs north and south, and contains two street car tracks.   Bristol street runs east and west, and ends at Washington avenue.   It contains a double street car track, which turns north into South Washington avenue.   At the time of the injury there was parked on the south side of Bristol street at the curb about 40 feet west of the intersection of South Washington avenue, a Maxwell touring car with the top and hind curtain up, which somewhat obstructed the view to the west along Bristol street of persons stepping from the south sidewalk into the street to take the car going easterly on Bristol street.   At the time the weather was clear, and there was nothing to obstruct the view of a person looking west from South Washington avenue on Bristol street, except the parked automobile above referred to, but any object that might be directly in the rear of the approaching street car might not be seen.   A little over a block on Bristol street west from South Washington avenue is the Bristol street bridge which spans the Saginaw river, and over which the line of street cars which operates in Bristol street runs.   All street

cars approaching from the west on Bristol street stop for a railroad track at the east approach of the bridge, and there is a slight up-grade from the bridge to Washington avenue. The city hall is located on the southwest corner of Bristol street and South Washington avenue.

The plaintiff claims that on the day mentioned he was at the city hall, and about 10:30 o'clock in the morning he came down the sidewalk leading from the easterly front doors of the city hall, and when he reached the sidewalk at the corner, he saw a street car approaching from the west on Bristol street, and that he intended to get on this car at the regular stopping place on the south side of Bristol street near the corner of Washington avenue; that he walked west towards the street car, which had stopped, or was about to stop at the place on Bristol street where cars take on and let off passengers, and that while walking upon Bristol street, upon the south sidewalk in the direction from which the car was coming, he looked to the west to ascertain whether there were any motor or other vehicles upon Bristol street coming in an easterly direction; that, while he saw the street car coming toward him, he neither saw nor heard any motor vehicle approaching him; that after he had left the curb, and was in the act of crossing the south side of Bristol street, which at this point was of the width of 17 feet or thereabouts, and without any warning being given by the driver of the automobile truck, he was suddenly struck, knocked down and injured by said truck coming from the west; that at the time he left the curb and started for the street car his vision of the street to the west was somewhat obstructed by the parked automobile, and that he was prevented from having a clear view west, until he passed beyond the width of the parked automobile, into the traveled part of

the street, when the motor truck of the defendant came suddenly from the west upon him, without giving him warning of any kind; and that he looked west upon Bristol street to ascertain whether any automobiles were coming towards him just before he left the curb, and it is not clear whether he looked again when he reached the traveled portion of the road, or whether he was struck immediately.    He claimed to have no recollection of seeing the truck of defendant, and did not remember being struck.   He claimed that he was not himself negligent in attempting to cross the south side of Bristol street for the purpose of entering the street car, then about to stop at the corner, as that was a regular stop.    He claimed that the employee of defendant was negligent in the manner in which he operated the truck in that he sounded no horn, gave no signal of any kind, and that the truck was being operated at a dangerous rate of speed, in view of the surroundings and conditions at the time and place; that defendant was negligent in driving too near the street car when it was about to stop, or had stopped, for the purpose of receiving and discharging passengers.    The plaintiff further claimed that the parked automobile was opposite the place where the street car stopped, which he claimed under the ordinance of the city constituted a "safety zone," to the extent of at least the distance of 6 feet to the south of the rear entrance to the street car; that the distance of this place on Bristol street where the car stopped to take on and let off passengers, and between the south rail of the street car track and the curb, was but 17 feet, and that the distance from the curb to the outside of the parked car was about 7 feet, leaving a distance from the south rail of the car tracks to the line parallel with the north side of the parked automobile of but 10 or 12 feet; that the body of the street car, and the entrance step to the

car occupied about 1½ feet, leaving but 8½ feet between the street car and a line parallel with the north side of the parked car; that 6 feet of this latter space was declared under the ordinance to constitute a safety zone for passengers alighting from or boarding the street car at this point; that there being only a remaining space of 2½ feet, the defendant's truck could not pass through said space without driving into the safety zone, and that, by reason thereof, it was and became the driver's duty to stop his truck at least 6 feet from the rear entrance of the street car; that at the time the street car stopped at least two persons were about to get on this street car, and that the plaintiff, looking west to ascertain whether there were any automobiles approaching the car, and seeing none, had a right to pass over the street to the safety zone, and was not obliged to continuously look to ascertain whether automobiles were approaching, as he proceeded to the car, but had the right to assume that defendant's employee operating said car would obey the ordinance and stop his truck before entering the safety zone, and would use ordinary care in the operating of the vehicle, in approaching the street car, for the safety of pedestrians upon the street; and that defendant's employee failed in the performance of his duty, and that by reason of his driving said truck through such space and safety zone the plaintiff was struck and permanently injured.    There was evidence tending to support these claims.

The defendant, on the other hand, claimed that its driver of said truck was an experienced and capable driver; that while said employee was on his way to the Bancroft House with a load of laundry he drove on Bristol street and across said bridge, and that when upon the bridge he was in the rear of said street car which also was proceeding east and that when the street car reached the railroad crossing it stopped and

defendant's driver stopped the truck; that when the car proceeded said driver turned into the regularly traveled portion of Bristol street on the southerly or right side thereof, and drove along near the street car as it proceeded easterly towards Washington avenue, and in plain view of plaintiff, and was running at a slow rate of speed; that the driver of the truck did not see plaintiff until just before he was struck; that plaintiff stepped out into the street in the pathway of the truck without warning, and that the driver could not see plaintiff before he got into the street, on account of the parked automobile, and that the truck stopped almost as soon as it struck plaintiff; that at the time of the accident the truck was about abreast of the street car; and that there was a safety stop, so-called, just before the street car would enter the South Washington avenue tracks, and at this point passengers were received and discharged by the street car company, and that there was nothing in the street to designate a safety zone at this point. There was also testimony tending to support defendant's claims.

After plaintiff had rested his case a motion was made to direct a verdict in favor of defendant on the grounds that there was no evidence of negligence of the driver of the truck, and that the evidence conclusively established the fact that plaintiff was guilty of contributory negligence under the law. The court reserved its decision on this motion. Again, at the close of the evidence, the defendant renewed the motion for a directed verdict, which was again taken under advisement, and the case was submitted to the jury, and a verdict for plaintiff was rendered. There are many assignments of error, embracing rulings of the court on admission and rejection of testimony, refusal to direct a verdict for defendant, failure to charge as requested, in the charge as given, and the denial of defendant's motion for a new trial, which

raises the question of the weight of the evidence to support plaintiff's claim. Many of the assignments of error go directly to the question of whether or not plaintiff was entitled to recover, as a matter of law, on the ground that he was guilty of contributory negligence; and whether or not the verdict was against the great weight of the evidence.

We have read and re-read this record with great care, and are unable to agree with counsel for defendant that it should be held that the plaintiff was guilty of contributory negligence as matter of law. We are of the opinion that that question was one for the jury under proper instructions. Upon that subject the trial court gave many of the requests to charge presented by counsel for defendant, with slight modifications, as follows:

"I charge you as a matter of law, a pedestrian is guilty of contributory negligence if he fails to take all reasonable and necessary precautions for his own safety in entering upon the traveled portion of a street, and if you find as a matter of fact plaintiff did not look for approaching automobiles, or if he did look that he could have seen said automobile delivery vehicle which subsequently struck him, and failed to observe it, then he is guilty of contributory negligence, and the verdict will be no cause of action. It is not enough that the plaintiff testifies that he looked in the direction from which said automobile was approaching; if said automobile was in plain view, it was incumbent upon him to see it, and the fact that the plaintiff testifies in this case that he looked and did not see an automobile approaching from the west, when as a matter of fact it is in plain view, precludes the idea that he could not see it, and if you should find as a matter of fact, that said automobile was in plain view, when plaintiff testifies that he looked and did not see the same, then your verdict will be for the defendant.

"The ordinary care which the law demands of one in the public highway is to look before attempting to

cross, and if you should find as a matter of fact, that the plaintiff did not look before he attempted to cross said street to the street car, then he is not entitled to recover, and your verdict will be for the defendant. * * * And if you should find as a matter of fact that if plaintiff had looked he could have seen the said automobile approaching then your verdict shall be for the defendant, notwithstanding that plaintiff testifies that he looked and did not see the automobile."

The foregoing is a small portion only of the charge of like tenor. Section 5 of the traffic ordinance is as follows:

"Distance From Street Cars. The driver of every vehicle shall keep such vehicle at not less than six feet from the running board or lower step of any street car headed in the same direction which is stopping or has stopped for the purpose of taking on, or discharging passengers; and, if by reason of the presence of other vehicles at the place where such car is stopping or has stopped, or by reason of the narrowness of the street, it is not possible to preserve the distance of six feet from the running board or lower step as herein prescribed, then the driver or operator of such vehicle shall stop the same at least six feet from the rear of such car and remain standing until such car has taken on or discharged its passengers and again started. In passing a car which is stopping or has stopped for the purpose of taking on or discharging passengers, the driver of such vehicle shall check such vehicle to one-half the lawful speed, and pass said car at no greater speed, and at least six feet from the running board or lower step of said street car."

The rate of speed under the ordinance in the business district is 10 miles per hour, and outside the business district 15 miles an hour.

It was conceded by plaintiff that the place where the injury occurred was not in the business district. The driver of the truck was familiar with the safety stop before the intersection of the streets involved.

The plaintiff claims, and we think correctly, that the law did not require him to continually look to the west and that after he entered what may be termed the safety zone, or the 6-foot limit, he had a right to assume that he would not be injured while standing there, and that the driver of the truck would not violate the traffic ordinance. The law is well stated in Berry on Automobiles (2d Ed.), §§ 263-268. In section 270 the author says:

"Where by ordinance or statute drivers of vehicles are forbidden to drive within a specified distance of a street car when it is stopped for the purpose of taking on or letting off passengers, a passenger has the right to assume that while within such distance from a standing street car from which he has alighted, he occupies a position of safety, and in the absence of any warning or reason to believe that a driver is about to, or will violate the law in this respect, he is not negligent in failing to look each way of the street to see if drivers are driving on the prohibited portion of the street."

See, also, sections 230-232.

We think the above doctrine has been repeatedly approved by this court in the following cases: *Benjamin* v. *McGraw*, 208 Mich. 75; *Church* v. *Larned*, 206 Mich. 77; *Patterson* v. *Wagner*, 204 Mich. 593; *Tuttle* v. *Briscoe Manfg. Co.*, 190 Mich. 22; *Schock* v. *Cooling*, 175 Mich. 313; *Bouma* v. *Dubois*, 169 Mich. 422; *Gerhard* v. *Ford Motor Co.*, 155 Mich. 618 (20 L. R. A. [N. S.] 232) ; *Darish* v. *Scott*, 212 Mich. 139; *Hanser* v. *Youngs*, 212 Mich. 508.

We refrain from quoting from the above cited cases because of the length of this opinion.

Counsel for defendant cite as controlling the case of *Tolmie* v. *Woodward Taxicab Co.*, 178 Mich. 426. Not only did three of the Justices dissent in that case, but we think it is readily distinguished from the instant case on the facts. In that case there was nothing to

obstruct the view of the plaintiff; there was no street car approaching, he was not in a place of safety, there was no violation of a traffic ordinance that misled the plaintiff, and he saw the automobile when 15 or 20 feet away, and deliberately walked into the path of the approaching vehicle. We do not review the decisions in other jurisdictions, because we think the question is covered by our own decisions.

We are of opinion that the trial court properly submitted the question of plaintiff's contributory negligence to the jury, and did not err in refusing to direct a verdict for defendant, as requested.

The most meritorious question in the case is raised by the 11th and 13th assignments of error, which may be considered together. The witness Louis L. Frost, who drove defendant's truck, was called by plaintiff for cross-examination under the statute. It appeared that soon after plaintiff was hit and fell in the street he was carried to a nearby restaurant, and Frost was. there.

Witness Cline, a policeman, arrived at the restaurant some time after the plaintiff was taken there. In the direct-examination of Cline by plaintiff's counsel the following occurred:

"*Q.* Did he (Frost) make any statement to you as to how he was running this car, how this accident happened?
"*A.* No—
"*Defendant's Counsel:* Object. Exception.
"*A.* He did after I asked him.
"*Q.* You may tell the court what he said.
"*Defendant's Counsel:* I object as incompetent and immaterial. Mr. Frost has not been examined on that. Any statement made by Mr. Frost at the time is not competent; isn't binding upon defendant, and not a part of the *res gestæ.*
"*The Court:* It appears now that Frost was employed by the defendant.

"*A.* I said, 'Didn't you know you were supposed to stop?' He said, 'Yes, and I feel sorry; I know I'm to blame for going through there.' He didn't say any more."

The trial court admitted in evidence over defendant's objection a written statement, signed by Frost, the driver of the truck, made on October 2, 1919, more than five months after the injury. It was as follows:

"October second, 1919.

"Statement of Louis Lagrande Frost in regard to accident that happened on corner of Washington and Bristol street on April 25, 1919, when Elmanzor Metcalf was struck by an automobile owned by Peerless Laundry & Dye Company, of Saginaw, West Side. I went to the Peerless Laundry to collect a bill, and Mr. Powers asked me to make a trip with his car to the Bancroft Hotel, to deliver some goods. I told him I had no driver's license, he said that wouldn't make any difference and said he was one-half (hour) late, and wanted me to hurry up. I took the machine and drove down Hamilton street to Bristol and across Bristol to Washington. A street car was coming to a stop on the corner of Bristol and Washington and an automobile was parked between the curb and the street car. I tried to pass before the street car came to a stop, and didn't see any man standing there until my car struck him. I stopped my machine as soon as possible and went to him, and rendered all the assistance I could. I helped to carry him to the hotel. When I saw him lying on the street I thought he was dead. I went with him to the hospital, and then they took me to the police station, and I was detained there until 9:30, and from there I went to my home and stayed. I am now living at Frost Corners with my father. This statement is made of my own free will and accord.

"LOUIS LAGRANDE FROST."

When this statement was offered in evidence and objected to, plaintiff's counsel, among other things, said:

"This witness has testified, and he has said that he didn't tell Mr. Powers that he had no license to drive this car. The statement offered in evidence is for the purpose of impeaching him upon that subject. The statute gives us the right to call the employee of the opposite party and gives us the right to cross-examine, and gives us the right to impeach his testimony. Here is a statement made by him with reference to that. We offer it in evidence to impeach him. * * * I offer it first as a statement from this witness with reference to how this accident happened. Second, for the purpose of impeaching the testimony that he gave on cross-examination."

It is the claim of defendant's counsel that the testimony of the witness Cline was erroneously received; that the statement of Frost there referred to was no part of the *res gestæ,* and that the question is ruled by the case of *Hyatt* v. *Leonard Storage Co.,* 196 Mich. 337, and the cases there cited.

We think the testimony should not have been received, and the pertinent question is whether its reception constituted reversible error, in view of the provisions of Act No. 89, Pub. Acts 1915 (3 Comp. Laws 1915, § 14565). The record in the *Hyatt Case* was an exceptional one. There we said:

"One cannot read this record without being impressed with the fact that the testimony here complained of was probably controlling of the verdict in the case, and we think, therefore, that its reception was prejudicial error."

Can that be said in the instant case? In the light of this record we think not. The witness Frost had already testified to a state of facts not inconsistent with the facts stated to Cline. Section 14565 provides that no case shall be reversed on the ground of the improper admission of evidence, "unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained

of has resulted in a miscarriage of justice." We have recently applied this rule in both criminal and civil cases. In the case of *Link* v. *Fahey*, 200 Mich. 308, a similar question was considered and it was said:

"A careful reading of the record impresses us with the belief that no different result would have been reached by the jury if the alleged objectionable testimony had been rejected. Independent of such testimony, plaintiff had sustained his theory of the case, by what appears to us to be a clear preponderance of the evidence. Assuming, then, that the declarations of the driver of the automobile, made soon after the collision, should have been excluded as hearsay or mere narrative of a past event, we are still of the opinion that its admission, even if erroneous, was not prejudicial."

We think that language applicable to the situation here. We cannot say that the error here complained of has resulted in a miscarriage of justice. In our opinion the same should be said as to the written statement of Frost. He had testified that he did not tell Powers that he didn't have a license or right to drive an automobile, and that the question was not asked. The statement was to the contrary, and it was competent to contradict him upon that point. It was admissible for that purpose. The court was not requested to limit its effect by any request to charge, and we must hold that the rulings did not constitute reversible error.

What we have said indicates our views upon the weight of the evidence. In our opinion the verdict of the jury was not against the weight of the evidence, and the trial court did not err in denying the motion for a new trial. Neither do we think that the verdict was excessive. There was evidence of much pain and suffering of plaintiff, as a result of the collision; that the injuries were of a permanent nature; and that

plaintiff had been unable to work from the time of the injury to the trial.

We have examined all of the assignments of error discussed by counsel, and, finding no reversible error in the record, the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.