## DARISH *v.* SCOTT.

1. NEGLIGENCE — EVIDENCE — NEGLIGENCE PER SE — QUESTION FOR JURY.

    In an action against the driver of an automobile for causing personal injuries resulting in the death of plaintiff's decedent, where, under the evidence, it was a question of fact whether defendant was violating the ordinance of the city of Detroit or 1 Comp. Laws 1915, § 4818, at the time of the accident, and was therefore *prima facie* guilty of negligence, the trial judge was in error in directing a verdict for the defendant, and the question of his negligence should have been submitted to the jury under proper instructions.

On the question of speed of automobile as negligence, see notes in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488, 42 L. R. A. (N. S.) 1180; 51 L. R. A. (N. S.) 993.

On reciprocal duty of driver of automobile and children in street, see note in L. R. A. 1918A, 245.

2. SAME—CONTRIBUTORY NEGLIGENCE—CONTRADICTORY TESTIMONY
—QUESTION FOR JURY.
> Where the case turned upon the testimony of one witness,
> whose testimony upon direct-examination tended to show
> that the question of decedent's contributory negligence
> was a question for the jury, but whose cross-examination
> clearly showed she was guilty of contributory negligence
> as a matter of law, the question as to which version was the
> correct one was a question for the jury, under proper in-
> structions.

Error to Wayne; Webster (Arthur), J.   Submitted
October 5, 1920.   (Docket No. 12.)   Decided Decem-
ber 21, 1920.

Case by Peter Darish, administrator of the estate
of Mary Darish, deceased, against Ralph B. Scott and
another for the alleged negligent killing of plaintiff's
decedent.   Judgment for defendants on a directed
verdict.   Plaintiff brings error.   Reversed.

*Clarence P. Milligan,* for appellant.

*Frank C. Cook* and *John P. O'Hara,* for appellees.

BIRD, J.   On the afternoon of August 31, 1917, de-
fendant Scott was driving his automobile in a westerly
direction on Grand River avenue in the city of De-
troit.   Soon after reaching Woodward avenue the
traffic officer gave the Grand River avenue traffic the
semaphore to "go," and defendant started across.
When he reached the west curb line of Woodward ave-
nue he slowed his machine almost to a stop on account
of the large number of pedestrians passing the inter-
section.   After a short pause the pedestrians sepa-
rated and opened a lane for him to pass through,
whereupon he increased the speed of his car to 8 or
10 miles an hour before reaching the building line of
Woodward avenue.   The sidewalk on Woodward ave-

nue at that point is 20 feet wide. Just west of the building line he ran into plaintiff's intestate, a young girl nearly 14 years of age, knocking her down and injuring her so seriously that she died a few hours thereafter.

The case was tried upon the theory that defendant Scott drove his car into and through the congested area in a reckless and negligent manner in that the speed of the car was excessive, if measured either by the statute or by the ordinance, and that he did not give sufficient warning of his approach. At the conclusion of plaintiff's testimony a verdict was directed for defendant because the trial court was of the opinion that plaintiff's intestate was guilty of contributory negligence. Whether the verdict was rightly directed is the principal question which we are asked to consider.

The case turned upon the testimony of one Charles G. Martin, a pedestrian, who was traveling in a southerly direction on Woodward avenue. He appears to have been the only witness who was able to testify as to the movements of the girl just preceding the accident. Appellant relies upon his testimony for a reversal and defendants rely upon it to sustain the judgment. Upon direct-examination he testified that the girl came to the edge of the curb at his right, hesitated a moment and started across, that when about three feet from the curb the car collided with her. Excerpts from his testimony follow:

"I saw him cross the car track with his machine and I saw him when he got clear of the car tracks, and as he headed into Grand River he stopped after he crossed the west traveled part of Woodward. He was right at the curb line then, that would bring about 20 feet from the point where I was standing. When he got there he did not stop his machine. He just eased his machine down so that his wheels were just turn-

ing about a mile an hour, then he started up again to about five; he did not come to any full stop.

"Q. He slowed down, you say. Did he give every indication that he was going to stop?

"A. Yes, he had his car—

"Q. You thought he was going to stop?

"A. Well, I knew he was not going to stop because he just eased his car down. * * *

"Q. He gave every indication that he was going to stop when he was about 20 feet from the point where you stood?

"A. Yes, sir. * * *

"Q. Where was the little girl when you first saw her?

"A. When she came right along side of me while I was facing south.

"Q. That is, she came on which side of you, over to this side or the other side?

"A. On the west side of me.

"Q. On the west side of you. Did you see the—you have already testified you saw the machine start up at that time?

"A. Yes, sir.

"Q. Did you see the machine strike the child?

"A. Yes, sir.

"Q. Now, how far was the little girl from the curb when the automobile struck her?

"A. Oh, the best that I can remember I guess about three feet. So I made a reach for her, the reach of my hand touched her clothes. * * *

"Q. What part of the machine struck her?

"A. The lamp on this here side, the right-hand side. After that I seen her under the hood of the engine. I could not say whether the wheel went over her or not, because it was done so quick. * * * To the best of my knowledge she came from the north. The first I noticed her was when she was along side of me at the curb. * * *

"Q. The time she stood there, the time she came and stood there, Mr. Martin, did you see the automobile, was it still there?

"A. No, it was right over, it was half way between. He was coming through, as I said before, she stepped up when he was coming through. He speeded up.

"*Q.* He speeded up?

"*A.* As I said before, either speeded or started up there, either way, as you take it, started or speeded, either way.

"*Q.* She was off the sidewalk when you tried to grab her?

"*A.* Yes, sir.

"*Q.* At that time you noticed the machine was then starting up?

"*A.* Yes, sir.

"*Q.* That is right, is it not?

"*A.* My fingers touched her clothes.

"*Q.* All right. But what the auto was doing when she was standing along side of you, you don't know positively, is that right?

"*A.* I don't know.

"*Q.* You don't know. It might have been back there at a stop?

"*A.* It might have been.

"*Q.* When you tried to grab her she was in the street and the machine was then approaching and started?

"*A.* Approaching.

"*Q.* And it was then within what distance of the child at that time?

"*A.* In what way do you mean, from the curb?

"*Q.* How far would it be east of this little girl at that time?

"*The Court:* At what time?

"*Q.* At the time you tried to grab her when she was in the street and the machine was approaching.

"*A.* She was just about, maybe six inches away from the machine, or a foot or so.   *   *   *

"*Q.* From the time he started up until he struck the girl there was no horn sounded?

"*A.* No horn sounded, that is what I said before.

"*Q.* He struck her with a great deal of violence, did he not?

"*A.* It was a hard blow.

"*Q.* A hard blow? How fast was he running, in your judgment, when he struck the child?

"*A.* Well, I would only approximate between 5 and 10, pretty close to 10.

"*Q.* Close to 10 miles an hour?

"*A.* Pretty close.

"*Q.* He was right then at the intersection?

"*A.* Yes, sir.

"*Q.* When he started up he was going about 8 or 10 miles, as near as you can figure?

"*A.* As near as I can figure."

It is argued by counsel that this testimony is open to the inference that at the time the girl concluded to venture across, the machine was upwards of 20 feet away, going slowly and giving the appearance that it was about to stop, and if this were the situation the girl was not guilty of contributory negligence, as a matter of law, but her negligence was a question of fact for the jury.

Subsequently, on cross-examination, the witness testified as follows:

"I was standing here, and I was looking this way when   *   *   *   watching this fellow coming. All of a sudden a little girl came right along side of me here, and she started out. I made a reach for her like this, my fingers touched her clothes, then there was a flash, and she was down.

"I was standing there, waiting for this car to pass. I could see it very distinctly and the car could be seen by anyone else who was standing along there if they were looking. A person looking across here ought to see it if he was watching out.

"*Q.* You say the first thing you knew this little girl came along side of you?

"*A.* Yes, sir, and started out.

"*Q.* Started out in the street?

"*A.* Yes, sir.

"*Q.* Where was the machine when this little girl came along beside you and started into the street?

"*A.* Well, the headlights then were just a little ways past me.

"*Q.* The headlight was past you?

"*A.* Yes, sir.

"*Q.* You mean to say that she ran directly out into the path of the machine?

"*A.* Right into the machine; struck it."

Subsequently the witness modified, to some extent, his testimony given upon direct and cross-examination. He finally concluded by saying that he did not know how far away the car was when the girl stepped into the street.

It is argued by defendant's counsel that this testimony given upon cross-examination made the girl guilty of contributory negligence, as a matter of law, and that the court was right in directing a verdict in accordance therewith. If it be true that the defendant drove his car through a narrow lane, made by the pedestrians separating, at the rate of 8 to 10 miles an hour, he violated an ordinance of the city of Detroit. If he did not sound his horn in approaching and passing through this lane, he violated the statute (1 Comp. Laws 1915, § 4818), and, therefore, would be *prima facie* guilty of negligence. *Westover* v. *Railway Co.*, 180 Mich. 373. The question as to whether he did sound his horn, and the question as to whether he drove faster than was reasonable and proper, under the circumstances, were questions for the jury, and the fact that he drove in excess of the ordinance rate at that point was a fact the jury had a right to take into consideration in determining whether he was negligent. *Cook* v. *Johnston*, 58 Mich. 437 (55 Am. Rep. 703); *Rotter* v. *Railway*, 205 Mich. 212.

But this, of course, would be of no avail to the plaintiff if his intestate was guilty of contributory negligence. We are impressed that both counsel have some basis for their respective contentions. The witness, Martin, first testified that the girl started across just as Scott started to come through the lane. At that time he was moving slowly and was upwards of 20 feet east of her. Keeping in mind the speed at which traffic of this kind ordinarily moves in congested areas in a city, we think it ought not to be said, as a matter of law, that the girl was guilty of con-

212—Mich.—10.

tributory negligence in attempting to go across ahead of the car. Had defendant moved with the caution that one ordinarily does, under those circumstances, she would doubtless have cleared the machine in safety. Then, too, it is probable, as suggested by counsel, that the girl's decision to start across may have been influenced in some degree by the action of two ladies who started across about the time she did, but who saw their danger in time to return to the curb. If the direct testimony of the witness is to be accepted as the true version of the affair we are satisfied that the negligence of the girl was a question for the jury.

On the other hand, the cross-examination of the witness clearly shows the girl was guilty of contributory negligence, as a matter of law. If the girl ran immediately in front of the machine or ran into the machine, as the witness stated, plaintiff would not be entitled to recover because of her negligence. The question as to which of these versions was the correct one was a question for the jury and not for the court. *Abbott* v. *Insurance Co.*, 208 Mich. 674, and cases cited. We think the court should have submitted the question of her negligence to the jury under both versions of the testimony, at the same time instructing them as to the rule of law to be applied in the event they found the fact either way.

In view of this conclusion, the judgment will be vacated and a new trial ordered. The plaintiff will recover costs in this court.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.