LUCY *v.* DOWD.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

On review of directed verdict because plaintiff's decedent, a pedestrian, was guilty of contributory negligence as a matter of law in walking on pavement as he did, testimony is viewed in light most favorable to plaintiff.

2. AUTOMOBILES—DIRECTED VERDICT—CONTRIBUTORY NEGLIGENCE — PEDESTRIANS.

In action for death of plaintiff's decedent, a pedestrian who was killed when midway across four-lane pavement by defendant's car, evidence that car was being driven after dark without lights until shortly before impact and that decedent could not have seen it until too late *held*, to render reversible error the direction of a verdict for defendant on ground decedent was contributorily negligent in walking across the pavement without looking or considering approaching traffic.

3. SAME—PEDESTRIANS—NEGLIGENCE—ANTICIPATED DANGERS.

Pedestrian about to cross a highway after dark, though bound to know of dangers incident thereto, is not bound to anticipate approach of an unlighted car thereon at speed of over 60 miles an hour.

4. SAME—DIFFERING VERSIONS OF ACCIDENT BY SAME WITNESS— QUESTION FOR JURY.

Whether one eyewitness' version of automobile accident in which plaintiff's decedent was killed, given on direct examination or different version, given on cross-examination, especially when latter was negatived by former as well as by that of other eyewitnesses *held*, to present question for jury.

Appeal from Genesee; Parker (James S.), J. Submitted April 10, 1936. (Docket No. 82, Calendar No. 38,891.) Decided June 16, 1936. Rehearing denied September 2, 1936.

Case by Cora Lucy, administratrix of the estate of James Lucy, deceased, for damages for death of plaintiff's decedent, a pedestrian crossing a highway when struck by defendant's automobile. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Dennis H. Dwyer* (*William J. Donovan,* of counsel), for plaintiff.

*Edward N. Barnard,* for defendant.

Toy, J. Plaintiff brings this action to recover damages for the death of James Lucy, who was killed when struck by the automobile of defendant.

At the close of plaintiff's proofs in the court below, defendant moved for directed verdict of no cause of action for the stated reason that the plaintiff's decedent was "guilty of contributory negligence as a matter of law."

The trial court granted the motion. Plaintiff appeals.

Does the record disclose that plaintiff's decedent was guilty of contributory negligence as a matter of law?

To make determination we must view the testimony in a light most favorable to plaintiff.

The accident happened at about eight p. m. on April 21, 1935, on the Dixie highway near Clarkston. The Dixie highway at this point is a four-traffic lane paved highway running in an easterly and westerly direction. Plaintiff's decedent and plaintiff's witness Watson, were returning from a restaurant known as the Highway Cafe on the northerly side of the highway, and had proceeded to the northern edge of the pavement, in their endeavor to

cross the highway to the southern portion where their automobile was parked. At the edge of the pavement Watson stopped but plaintiff's decedent, Lucy, continued walking onto the highway, and when about the center thereof he was struck by the automobile being driven by defendant in a westerly direction. Lucy was knocked 15 feet in the air and 75 feet in distance by the impact, causing death.

The testimony indicated that defendant's automobile was being driven between 60 and 65 miles per hour at the time of the accident. The eyewitnesses to the accident produced by plaintiff were Watson, Wesolowski and Shaughnessey. Watson testified that it was dark at the time of the accident, that he, standing at the edge of the pavement, "was looking both ways," as Lucy proceeded on to the highway. He testified on direct examination:

"*Q.* Did you see the automobile that struck him before it struck him?

"*A.* Well, just when it hit him, that is all I seen.

"*Q.* What do you mean? was it dark at the time?

"*A.* Yes. * * *

"*Q*: State whether or not the car had lights on?

"*A.* I seen one light flashing as he hit.

"*Q.* Were there any lights immediately before you saw the one light flash?

"*A.* No, sir.

"*Q.* There was only one light?

"*A.* Yes, sir.

"*Q.* Which light was it?

"*A.* It was the left front.

"*Q.* The left front. What part of the automobile struck Mr. Lucy?

"*A.* Right in the middle.

"*Q.* Was there any warning given by the automobile?

"*A.* Not that I know of. * * *

"*Q.* And you say there was a light put on before the impact?

"*A.* Yes, sir.

"*Q.* Just one light?

"*A.* That is all I seen.

"*Q.* Was the car lighted prior to that time at all?

"*A.* I seen nothing.

"*Q.* Were you in a position to observe?

"*A.* Well, I was looking both ways."

On cross-examination he testified:

"*Q.* Well, when you got to the edge of the pavement, Mr. Watson, you stopped, didn't you?

"*A.* Yes, sir. * * *

"*Q.* You looked at the traffic both ways, didn't you?

"*A.* Yes, sir.

"*Q.* There was no trouble of your seeing way down that street, however, or either way was there?

"*A.* No, I guess there was—I could not see that car.

"*Q.* There was nothing to keep you from seeing if you had your eyes open, nothing to keep you or Mr. Lucy from seeing up in any direction, was there? * * *

"*A.* Well, no. When Mr. Lucy got to the pavement, well, he just walked out in front. He walked where he had a right, anybody would be crossing the street, highway. * * *

"*Q.* Now, then, when the car came along and you saw the car was coming, you yelled again, didn't you, you hollered to Mr. Lucy, didn't you?

"*A.* Yes, when just about—

"*Q.* And when you did he jumped back, he jumped a step right backwards?

"*A.* Well, it was so quick.

"*Q.* You said to Mr. Yergon he jumped backwards in the path of the car, didn't you?

"*A.* I guess you are right.

"*Q.* All right. Now, when he jumped backwards the car hit him in the middle of the pavement, didn't it?

"*A.* Yes. * * *

"*Q.* You don't know whether they (lights) were on or off; I say only one you just saw is all that was lit?

"*A.* It looked to me like he just turned them on."

Wesolowski testified:

"There were not any lights on the car that struck him until it was almost on top of him and he switched them on; there was no left front light.

"*Q.* About how far was the automobile away when the light, the one front light was switched on?

"*A.* Oh, I should judge about 75 feet.

"*Q.* Was there any warning or signal of approach given by the driver of the automobile?

"*A.* No, sir.

"*Q.* State whether or not it was dark at the time this man was struck.

"*A.* Quite dark."

He testified that he was "pretty close" to Lucy and Watson, but that he never heard Watson shout to Lucy.

Shaughnessey testified that defendant's car bore one light, which he observed about one second before the "crash;" he further testified that he was where he could have heard the sounding of the horn, but heard none. He heard no one shout to Lucy.

The trial court directed the verdict of no cause of action on the stated ground "that the deceased in this case was guilty of contributory negligence in walking in upon that pavement to the place where he was killed without looking or considering the traffic that was approaching him."

We think the trial court was in error. While the testimony indicates that Lucy entered the highway without stopping, that circumstance of itself does not here convict him of contributory negligence. The testimony does not show whether Lucy looked for approaching traffic before entering the traffic lanes, yet the inference appears from the testimony of plaintiff's witnesses that even had he looked, he could not have seen the approaching car because of darkness, and because the car did not have its lamps lighted.

The witnesses who did look were unable to see the approaching car except at the instant before the impact, when its lights suddenly flashed on. Had it not been dark or if the lights of defendant's car had been on, there might then be reason for holding that the deceased was guilty of contributory negligence as a matter of law, but under the circumstances as developed by plaintiff's witnesses, we think the question of whether deceased's actions were negligent and contributed to the accident was for the jury. See *Fenn* v. *Mills,* 243 Mich. 634.

It was said by this court in *Leary* v. *Fisher,* 248 Mich. 574,

"It is a want of care, the gist of negligence, which on the part of the plaintiff, if it contributed to his injury, bars recovery. The plaintiff had a right to go across the highway. He was bound to know it was more or less dangerous by reason of its use for automobile traffic, but he was not bound to anticipate defendant would drive at an excessive rate of speed or on the wrong side of the highway."

And so here, the deceased had a right to cross the highway. He was bound to know of the dangers incident thereto, but he was not bound to anticipate that defendant, after dark, would drive his auto-

mobile thereon without lights, at a rate of 60 miles or more an hour.

True, the witness Watson on cross-examination gave a different version of the accident than when testifying on direct, and his testimony on cross-examination indicated that deceased was guilty of contributory negligence as a matter of law. His testimony on direct examination, however, tends to negative such conclusion. So does the testimony of the witnesses Wesolowski and Shaughnessey.

The question as to which one of these versions was correct, was for the jury. *Darish* v. *Scott,* 212 Mich. 139; *Abbott* v. *Travelers Ins. Co.,* 208 Mich. 654.

The judgment is reversed and a new trial granted, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. POTTER, J., took no part in this decision.